STATE OF NORTH CAROLINA v. JEFFREY WAYNE SULLIVAN

No. 865SC1314

(Filed 7 July 1987)

1. Criminal Law §§ 34.4, 85— evidence of prior crime—inadmissible character evidence—error not prejudicial

   Though evidence that defendant came into possession of a large quantity of dynamite the day before the shooting with which he was charged was admissible under N.C.G.S. § 8C-1, Rule 404(b), to show preparation and plan, evidence that he stole the dynamite was not admissible under Rule 608 to show defendant's character for untruthfulness; however, admission of that evidence was harmless error where defendant admitted shooting the victim, and his defense was that he lost control in a fit of frustration and/or confusion.

2. Homicide § 30.2— failure to submit lesser offense of voluntary manslaughter—no error

   The trial court in a first degree murder case did not err in failing to instruct the jury on the lesser included offense of voluntary manslaughter, since the victim's role in defendant's frustrated romance or the victim's refusal to behave toward a woman in the way defendant wished could not have constituted adequate provocation for a shooting in the eyes of a rational trier of fact; there was no evidence of self-defense; and there was no evidence of an affray between defendant and the victim or that defendant saw a weapon or felt threatened by the victim.

3. Criminal Law § 138.32— homicide—compulsion—failure to find mitigating factor—no error

   In a homicide prosecution where the evidence tended to show that defendant shot a man with whom he competed for the same woman's affections, there was no merit to defendant's contention that the trial court erred in failing to find as a mitigating factor during sentencing that defendant acted under a compulsion which was insufficient to constitute a defense but significantly reduced his culpability, since the trial court considered the testimony of a psychiatrist, but chose not to label defendant's action as one performed under a "compulsion."

APPEAL by defendant from *Strickland, Judge.* Judgment entered 13 June 1986 in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 11 June 1987.

*Attorney General Lacy H. Thornburg, by Associate Attorney General Rodney S. Maddox, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Leland Q. Towns, for defendant appellant.*

BECTON, Judge.

Defendant, Jeffrey Wayne Sullivan, was convicted of second degree murder by a jury and sentenced to forty years imprisonment. He appeals. We find no prejudicial error.

I

Defendant concedes that he pulled the trigger of the pistol that launched five bullets into the head and chest of Robert Hurd, causing Hurd's death on 28 October 1985. The only issue contested at trial was the defendant's degree of culpability.

Defendant was charged with first-degree murder. The State's evidence showed that the defendant and Hurd were competing for the affection of the same woman (Susan Northam). Defendant confronted Hurd on numerous occasions, including the day of the shooting, to implore Hurd to "leave Susan alone." On the day of the shooting, defendant met with Hurd at a Hardee's Restaurant where he talked to Hurd for approximately one hour in an attempt to convince Hurd to either bow out or join him in insisting that Susan choose between the two men. When Hurd refused to adopt defendant's strategy for handling Susan, defendant went to his car and retrieved a pistol, which he hid in his belt, and a recent letter from Susan, which he showed to Hurd as positive proof that Susan preferred defendant. Hurd, then sitting behind the steering wheel of his own automobile, laughed at the letter. Defendant then displayed the pistol, pointing it at Hurd's face from close range.

Defendant testified that at that point Hurd said, "go ahead, you won't shoot," raised his hands quickly, with something held in his right hand, and suddenly thrust himself backward into the car seat. Defendant then shot Hurd five times, and fled.

Defendant was armed with a shotgun, pipe bombs, and dynamite. His path of flight took him through the woods of Brunswick County; through South Carolina, where he acquired a driver's license under an assumed name, pawned the pistol he used in the shooting, and stole a license plate from another automobile; and ultimately to Arizona, where he was apprehended by the Arizona State Police in his own automobile, which still contained the pipe bombs, a shotgun, and a large quantity of dynamite.

Hurd was found dead in his automobile holding a Bic ink pen in his right hand.

## II

Defendant was charged with first degree murder. The jury found him guilty of the lesser included offense of second degree murder. Defendant raises three issues on appeal: (1) the trial court erred in admitting any testimony regarding defendant's acquisition and disposition of the dynamite; (2) the trial court erred in denying defendant's request for jury instruction on voluntary manslaughter; and (3) the trial court abused its discretion in failing to find as a mitigating factor in sentencing that defendant acted under a compulsion when shooting Hurd.

## A

[1]   Fleet Rose Spell testified that on the day before defendant shot Hurd, defendant gave a box of dynamite to Spell, referring to it as an early Christmas present. Defendant testified in his own behalf, and during cross-examination the following colloquy occurred:

Q. The dynamite that was in your car at that time, how long had you had it in your car?

MR. BAIN: Objection.

COURT: Overruled.

A. Probably less than 24 hours.

Q. Where did you get it from?

MR. BAIN: Objection.

COURT: Overruled.

A. A dynamite shack out in between Phoenix and Navassa in Brunswick County.

Q. Was that your dynamite?

MR. BAIN: Objection.

COURT: Overruled.

A. I am not sure whose it was.

State v. Sullivan

Q. Did you have permission from anyone to take that dynamite from that shack?

MR. BAIN: Objection.

COURT: Overruled.

A. No, sir.

Q. How did you get in the dynamite shack to get the dynamite?

MR. BAIN: Objection.

COURT: Overruled.

A. I used a key. It has two locks on the door and [I] used a key in the bottom lock and opened it up but the top lock was a different grove [sic] where the key wouldn't slide in and I drilled the top lock out.

Q. What do you mean you drilled the top lock out?

MR. BAIN: Objection.

COURT: Overruled.

A. I took a drill like you would drill a hole in this board here.

Q. You happened to have a drill in your car that you went to get to drill it out?

MR. BAIN: Objection.

COURT: Overruled.

A. I didn't understand.

Q. Where did you get the drill from?

A. From home.

Q. How did you happen to have it?

A. I got it so I could do that.

Q. So less than 24 hours before you had broken into that shack for the purpose of stealing the dynamite. Is that correct?

MR. BAIN: Objection.

COURT: Overruled.

A. Less than 24 hours before.

Defendant contends that all of the testimony regarding his theft of the dynamite was irrelevant to the charges against him and was inadmissible character evidence.

No doubt the most often cited rule and exception in the North Carolina Rules of Evidence is Rule 404(b) which provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." N.C. Gen. Stat. Sec. 8C-1-404(b) (1986). The State argues that the evidence regarding the dynamite was admissible under Rule 404(b) to show that defendant planned Hurd's murder. The State showed that defendant threatened Hurd just two days before he shot Hurd, that defendant amassed a personal armory shortly before the shooting, and that he implied to his best friend that he was leaving town. Those facts taken together paint a plausible picture of defendant planning Robert Hurd's murder and his own escape. Thus the evidence that defendant came into possession of a large quantity of dynamite the day before the shooting was admissible under Rule 404(b) to show "preparation" and "plan."

However, the manner by which defendant came to possess the dynamite has no relationship to his possible intent to shoot Hurd. In other words, while the criminal act of possessing dynamite was admissible to show defendant's plan to kill Hurd, his criminal act of stealing the dynamite was not. The State argues that the evidence that defendant stole the dynamite was admissible to show his character for untruthfulness under Rule 608. N.C. Gen. Stat. Sec. 8C-1-608 (1986). We agree that certain varieties of theft may reflect an individual's character for untruthfulness. But the crimes most commonly approved of involve some use of deception, fraud, or trickery. *See State v. Morgan*, 315 N.C. 626, 635, 340 S.E. 2d 84, 90 (1986). Defendant's act of breaking the lock on a dynamite shack hardly reflects on his

character for untruthfulness. The trial judge erred in admitting the evidence that defendant stole the dynamite.

Although we find that it was error to admit the evidence that defendant stole the dynamite pursuant to either Rule 404(b) or Rule 608 on the theories presented by the State on appeal, we hold that there is no "reasonable possibility that, had the error in question not been committed, a different result would have been reached at trial." N.C. Gen. Stat. Sec. 15A-1443(a) (1983). *See also State v. Morgan.* The error was therefore harmless in light of the other evidence properly admitted at trial.

The defendant admitted shooting Hurd. His defense was that he lost control in a fit of frustration and/or confusion. The focus of the State's inquiry about the theft was the timing—that is, that it occurred less than 24 hours before the shooting—rather than the theft itself.

B

**[2]** Defendant next contends that the trial court erred in failing to instruct the jury on the lesser included offense of voluntary manslaughter. The sole factor determining the judge's obligation to give such an instruction is whether there is any evidence in the record which might support a conviction for the less grievous offense. *See State v. Childress,* 228 N.C. 208, 45 S.E. 2d 42 (1947). As defendant notes, voluntary manslaughter occurs when one kills intentionally but does so in the heat of passion suddenly aroused by adequate provocation, or in the exercise of self-defense where excessive force under the circumstance is employed, or where the defendant is the aggressor bringing on the affray. Although a killing under these circumstances is both unlawful and intentional, the circumstances themselves are said to displace malice and to reduce the offense from murder to manslaughter. *State v. Wilkerson,* 295 N.C. 559, 247 S.E. 2d 905 (1978); *State v. Ferrell,* 300 N.C. 157, 265 S.E. 2d 210 (1980); *State v. Lindsay,* 45 N.C. App. 514, 263 S.E. 2d 364 (1980).

Defendant cannot logically maintain that Hurd's role in his frustrated romance or that Hurd's refusal to handle the situation in the manner that defendant wished, could have constituted "adequate provocation" for a shooting in the eyes of a rational trier of fact. Similarly, there is no evidence of self-defense. The

record does not contain any evidence of an affray or physical confrontation between Hurd and defendant at any time. Eyewitnesses testified that the two men were engaged in an apparently calm discussion immediately before the shooting. One witness stated that Hurd was smiling moments before defendant shot him. Defendant testified that Hurd raised his hands suddenly before he shot him but nowhere did defendant assert that he saw a weapon or even felt threatened by Hurd. This assignment of error is overruled.

### C

**[3]** Defendant finally contends that the trial court abused its discretion by failing to find as a mitigating factor during sentencing, that defendant acted under a compulsion which was insufficient to constitute a defense but significantly reduced his culpability. Defendant bases this contention on the testimony of Dr. Bob Rollins, a forensic psychiatrist. Dr. Rollins testified that in his opinion the defendant was suffering from a mental and emotional disorder at the time of the shooting which severely impaired his judgment and caused him to lose control. He said the condition was brought on by defendant's inability to cope with the relationship between himself, Northam and Hurd. He described defendant's pulling the trigger in response to Hurd's hand movements as "reflexive."

The defendant has the burden of establishing mitigating factors by a preponderance of the evidence. *State v. Hinnant*, 65 N.C. App. 130, 308 S.E. 2d 732 (1983), *cert. denied*, 310 N.C. 310, 312 S.E. 2d 653 (1984). Black's Law Dictionary defines a compulsion as "forcible inducement to the commission of an act, . . . the act of driving or urging by force or by physical or moral constraint." Black's Law Dictionary 260 (rev. 5th ed. 1979). Defendant's mental condition was described as an absence of control, rather than as a subordination. The trial judge considered Dr. Rollins' testimony, then found as a mitigating factor that "the defendant was suffering from a mental condition that was insufficient to constitute a defense by [sic] significantly reduced his culpability for the offense." Obviously the trial judge did not ignore the evidence of a mitigating factor; rather, he chose not to label defendant's action as one performed under a "compulsion." This assignment of error is overruled.

We find no prejudicial error.

Judges MARTIN and COZORT concur.