STATE OF NORTH CAROLINA v. SHELIA DIANE HOLDEN

No. 494A87

(Filed 9 March 1988)

**1. Criminal Law § 138.27 — murder — aggravating factor — position of trust or confidence — infant**

The trial court did not err in sentencing defendant on a plea of guilty to second degree murder by finding as an aggravating factor that defendant took advantage of a position of trust or confidence where the victim was only three months old. This aggravating factor does not require evidence of a conscious

State v. Holden

mental process on the part of an infant victim and may properly be grounded in the child's dependence on the defendant. N.C.G.S. § 15A-1340.4(a)(1)n (1983).

**2. Criminal Law § 138.32— murder—mitigating factors—compulsion—not found**

The trial court did not err in a prosecution for the second degree murder of an infant by her mother by failing to find the statutory mitigating factor that defendant committed the offense under duress, coercion, threat or compulsion insufficient to constitute a defense but significantly reducing her culpability where defendant presented only evidence of internal psychological forces which led her to take the life of her child. Although defendant's psychological condition was caused by external factors, it is clear that this mitigating factor was intended to apply to situations in which some type of external pressure is directly exerted upon defendant in an attempt to force commission of the offense; moreover, defendant's state of mind was properly considered by the judge when he found in mitigation that defendant was suffering from a mental condition. N.C.G.S. § 15A-1340.4(a)(2)b (1983).

**3. Criminal Law § 138.35— murder—mitigating factor—immaturity or limited mental capacity—not found**

The trial judge did not abuse his discretion when sentencing defendant for the second degree murder of her infant by failing to find the statutory mitigating factor that defendant's immaturity or limited mental capacity significantly reduced her culpability where defendant was seventeen years old at the time of the crime; had the emotional maturity of a twelve or thirteen year old; had diminished intellectual capacity; and had an IQ of 70. The State's summary of the evidence tended to show that defendant was aware of other options, such as leaving the baby with her cousin, but chose not to pursue them and began plotting murder; defendant had planned to put her baby in a trash can while her family slept on the night before the drowning; defendant briefly considered rescuing the baby during the drowning but rejected the notion and watched the child sink; and defendant had the presence of mind after the drowning to fabricate a story implicating someone else. N.C.G.S. § 15A-1340.4(a)(2)e (1983).

**4. Criminal Law § 138.34— murder—mitigating factor—physical condition—not found—no error**

The trial court did not err in sentencing defendant for the second degree murder of her own child by failing to find in mitigation that defendant suffered from a physical condition insufficient to constitute a defense but significantly reducing her culpability for the offense where defendant presented evidence of poor health and physical deterioration due to physical abuse, seizures, and inadequate recovery from childbirth, but the trial judge could properly have inferred from the State's evidence that defendant was aware of the nature of her conduct. N.C.G.S. § 15A-1340.4(a)(2)d.

**5. Criminal Law § 138.42— second degree murder—nonstatutory mitigating factor—psychological condition—not found**

The trial court did not err when sentencing defendant for the second degree murder of her infant by not finding as a non-statutory mitigating factor that defendant suffered from a psychological condition insufficient to con-

stitute a defense but significantly reducing her culpability where the trial judge found defendant's mental condition to be a statutory mitigating factor under N.C.G.S. § 15A-1340.4(a)(2)d. The term mental condition as used in that statute includes not only mental diseases and illnesses but also psychological disorders which are not necessarily categorized as diseases or illnesses, and the trial judge clearly considered the evidence relating to defendant's psychological paralysis in determining that she suffered from a mental condition at the time of the offense.

APPEAL by defendant pursuant to N.C.G.S. § 15A-1444(a1) and Rule 4(d) of the North Carolina Rules of Appellate Procedure from a judgment sentencing defendant to life imprisonment on her plea of guilty of murder in the second degree, said judgment imposed by *Hight, J.*, at the 21 May 1987 session of Superior Court, WAKE County. Heard in the Supreme Court 11 February 1988.

*Lacy H. Thornburg, Attorney General, by Steven F. Bryant, Assistant Attorney General, for the state.*

*Gordon Widenhouse for defendant.*

MARTIN, Justice.

Defendant entered a plea of guilty to the second-degree murder of her infant daughter. At the sentencing hearing the state summarized the evidence as follows:

On 6 August 1986, Deputy Kim Pierce of the Wake County Sheriff's Department responded to a call from a grocery store near Wake Forest. He met with defendant, aged seventeen, who reported that her three-month-old daughter, Dekavia, had been kidnapped. Defendant stated that she had been walking at a nearby pond with her two small children earlier that evening when she was approached by two men. These men snatched Dekavia from her arms and drove away in a large white automobile.

Defendant led Deputy Pierce down a dirt path to the pond. Pierce could find no tire tracks in the vicinity. As he beamed his flashlight across the water, Pierce spotted an object floating some twenty feet from the pond's edge. Moving closer, he discerned the feet and legs of a small person who was upside down in the water. Pierce waded into the pond and retrieved the body of Dekavia Holden.

Defendant gave a statement to Pierce describing the alleged assailants and their car. In subsequent interviews, investigating

officers noted some inconsistencies in defendant's account. Unable to confirm any of the details of the story, Detective Charles Young asked defendant to take a polygraph examination. On 8 September, during the pre-polygraph interview, defendant confessed that she had lied about the abduction and that she herself had cast the baby into the water.

Defendant explained that she threw Dekavia into the pond because the baby's father, David Johnson, and his family disliked Dekavia and acted as if she were "in the way." Defendant stated that

> something was just telling me that just throw her in the pond, maybe everything will be all right, maybe something will straighten up, maybe David will pay more attention to me then, you know, so I just chunked her in the pond, and I stood there, and then I started to, you know, jump in there and get her out, but I didn't, I said well, I'll just let her go, I said it will probably be for the best because didn't nobody act like they liked her, everybody ignored her.

Defendant indicated that she had first considered killing the baby on the night preceding the offense in question. On the day of the drowning she was washing dishes when she decided to go through with it; it was very hot in the house and Dekavia was crying a lot. When defendant realized what she had done she was afraid to tell anybody and quickly fabricated the kidnapping story.

The state's medical evidence indicated that the victim weighed eleven pounds and was a normally developed three-month-old infant. The cause of death was drowning. In the pathologist's opinion, the victim probably lived for several minutes after entering the water.

Defendant presented the following evidence concerning her troubled familial background through the expert testimony of Dr. Faye Sultan, clinical psychologist. Dr. Sultan testified that defendant's upbringing was marked by confused and distorted familial relationships. Defendant, who was conceived when her thirteen-year-old mother was raped by her stepfather, was constantly reminded of her incestuous origins and made to feel responsible for turmoil within the family. Defendant's mother often told defendant that she wished she had never been born, that she

wanted to kill her, and that she was in the way. Defendant's own complaints of sexual molestation by a family member were ignored.

Defendant began her relationship with David Johnson when she was thirteen. Johnson subjected her to constant physical and emotional abuse, beating her face and abdomen with his fists and threatening to molest the children. During both of defendant's pregnancies Johnson raped her repeatedly in an attempt to harm both her and the unborn child.

Defendant's mother and Johnson incessantly berated defendant for becoming pregnant a second time. They told her that no one wanted the baby yet refused to allow defendant to put Dekavia up for adoption. After Dekavia's birth, much verbal abuse within the family centered on defendant's parental inadequacies. She became convinced that she was not capable of caring for the children competently. During stressful periods, defendant would hear voices censuring her and talking about Dekavia. These auditory hallucinations were very active on the day of the drowning.

Defendant is mildly mentally retarded, with an IQ of 70. According to Dr. Sultan, defendant's limited intellectual capacity prevented her from overcoming her feelings of guilt about the circumstances of her own birth. Defendant came to believe that she was worthless and deserving of abuse. As a result, defendant felt vulnerable, helpless, and overwhelmed in her attempts to deal with the stresses of child-rearing and adult life. She became, in effect, psychologically paralyzed.

Based on this history and on psychological testing, Dr. Sultan concluded that defendant suffered from (1) abused spouse syndrome, (2) post-partum depression, (3) borderline intellectual functioning, and (4) mixed personality disorder with dependency and histrionic features. Dr. Sultan also noted that defendant had experienced seizures of undetermined origin and was in a deteriorated physical condition due to inadequate recovery from her Cesarean section. In Dr. Sultan's opinion, defendant was suffering from significant mental and physical impairment when she took the life of her child.

Because defendant's plea agreement did not include a sentence commitment, the trial judge was required to consider all aggravating and mitigating factors listed in N.C.G.S § 15A-1340.4(a). *State v. Melton,* 307 N.C. 370, 298 S.E. 2d 673 (1983). Accordingly, at the close of the evidence, the judge found as factors in aggravation that the victim was very young and that defendant had taken advantage of a position of trust and confidence to commit the offense. He found as factors in mitigation that defendant had no record of criminal convictions, that she was suffering from a mental condition that was insufficient to constitute a defense but significantly reduced her culpability for the offense, and that she voluntarily acknowledged wrongdoing in connection with the offense to a law enforcement officer at an early stage of the criminal process. After determining that the aggravating factors outweighed the mitigating factors, the trial judge sentenced defendant to a term of life imprisonment, to be served as a committed youthful offender. Defendant brings forth three assignments of error with respect to the sentencing.

[1] Defendant first contends that the trial judge erred in finding as an aggravating factor that defendant took advantage of a position of trust or confidence to commit the offense. N.C.G.S. § 15A-1340.4(a)(1)(n) (1983). She argues that there was insufficient evidence to establish the factor in this case because the three-month-old victim was incapable of affirmatively reposing trust or confidence in defendant or anyone else.

We recently discussed the trust and confidence factor in the context of infanticide in *State v. Daniel,* 319 N.C. 308, 354 S.E. 2d 216 (1987). In that case we recognized that this aggravating factor does not require evidence of a conscious mental process on the part of an infant victim and may properly be grounded in the child's dependence upon the defendant:

> Such a finding depends instead upon the existence of a relationship between the defendant and victim generally conducive to reliance of one upon the other. A relationship of trust or confidence existed because defendant was the child's mother and because she was singularly responsible for its welfare. The abuse of her parental role relates to defendant's character and conduct and was reasonably related to the purposes of sentencing.

*Id.* at 311, 354 S.E. 2d at 218.

We find *Daniel* to be dispositive of this issue. Defendant's assignment of error is overruled.

Defendant next maintains that the trial judge erred in failing to find several of the statutory mitigating factors listed in N.C.G.S. § 15A-1340.4(a)(2). We examine each of her contentions separately, noting at the outset that defendant bears the burden of persuasion on mitigating factors. *State v. Taylor,* 309 N.C. 570, 308 S.E. 2d 302 (1983). The judge has a duty to find a statutory mitigating factor when the evidence in support of the factor is uncontradicted, substantial, and manifestly credible. *State v. Jones,* 309 N.C. 214, 306 S.E. 2d 451 (1983).

[2] Defendant first argues that the trial judge erred in failing to find the statutory mitigating factor that defendant committed the offense under duress, coercion, threat, or compulsion which was insufficient to constitute a defense but significantly reduced her culpability. N.C.G.S. § 15A-1340.4(a)(2)(b) (1983). Specifically defendant argues that the emotional problems engendered by her deprived background and abusive environment created a "sense of compulsion" that drove her to commit the murderous deed.

Compulsion is defined as a "driving or urging by force or by physical or moral constraint" or the "forcible inducement to the commission of an act." Black's Law Dictionary 260 (5th ed. 1979). The statutory factor in question lists compulsion together with duress, coercion, and threat. Each of these terms implies some type of force. Thus, it is clear from the definition and the context that the mitigating factor is intended to apply to situations in which some type of *external* pressure is directly exerted upon the defendant in an attempt to force commission of the offense.

Here defendant presented only evidence of *internal,* psychological forces which led her to take the life of her child. (Although defendant's psychological condition was certainly caused by external factors, such as physical and emotional abuse, this abuse was not directed toward forcing defendant to commit the crime.) We believe that evidence of defendant's state of mind was properly considered by the judge when he found in mitigation that defendant was suffering from a mental condition. The judge did not ignore the evidence; instead he more appropriately labeled de-

fendant's action as one performed under the influence of mental suffering rather than one performed under compulsion. *See State v. Bolinger,* 320 N.C. 596, 359 S.E. 2d 459 (1987); *State v. Sullivan,* 86 N.C. App. 316, 357 S.E. 2d 414, *disc. rev. denied,* 321 N.C. 123, 361 S.E. 2d 602 (1987).

[3] Defendant next argues that the trial judge erred in failing to find the statutory mitigating factor that defendant's immaturity or limited mental capacity at the time of the commission of the offense significantly reduced her culpability for the offense. N.C.G.S. § 15A-1340.4(a)(2)(e) (1983). This factor includes two inquiries: one as to the immaturity or limited mental capacity and one as to the effect of such immaturity or limited mental capacity upon culpability. *State v. Moore,* 317 N.C. 275, 345 S.E. 2d 217 (1986).

There was uncontradicted evidence that defendant was seventeen years old at the time of the crime and had the emotional maturity of a twelve or thirteen year old. Likewise, there was uncontradicted evidence that defendant had diminished intellectual capacity and an IQ of 70. Defendant argues that this emotional immaturity and mild mental retardation lessened her culpability for the crime because it impaired her ability to interpret her situation at the time of the offense and to discern various other options available to her.

It is within the trial judge's discretion to assess the conditions and circumstances of the case in determining whether the defendant's immaturity or limited mental capacity significantly reduced culpability. *See State v. Smith,* 321 N.C. 290, 362 S.E. 2d 159 (1987); *State v. Moore,* 317 N.C. 275, 345 S.E. 2d 217.

The state's summary of the evidence tended to show that defendant was in fact aware of other options, such as leaving the baby with her cousin, but chose not to pursue them. Instead she began plotting the murder. On the night before the drowning, defendant had planned to put Dekavia in a trash can while her family slept. During the drowning, defendant briefly considered rescuing the baby but rejected this notion and watched the child sink. After the drowning, defendant had the presence of mind to fabricate a story implicating someone else. This evidence of planning, weighing of options, and covering her own tracks tended to negate defendant's claim that she was unable to appreciate her

situation or the nature of her conduct. We cannot say that the trial judge abused his discretion in failing to find that defendant's culpability was reduced by her immaturity or limited mental capacity in this case.

[4] Defendant next argues that the trial judge erred in failing to find that she suffered from a physical condition that was insufficient to constitute a defense but significantly reduced her culpability for the offense, pursuant to N.C.G.S. § 15A-1340.4(a)(2)(d). Defendant presented evidence of poor health and physical deterioration due to physical abuse, seizures, and inadequate recovery from childbirth. She argues that her physical condition impaired her ability to appreciate her own actions when she took the life of her child. As in the preceding issue, we note that the trial judge could properly have inferred from the state's evidence that defendant was aware of the nature of her conduct. The trial judge did not abuse his discretion in failing to find that defendant's physical condition significantly reduced her culpability for the offense.

[5] Finally, defendant contends that the trial judge erred in failing to find as a nonstatutory mitigating factor that defendant "suffered from a psychological condition insufficient to constitute a defense but significantly reducing her culpability." Consideration of nonstatutory factors is a matter within the sound discretion of the trial judge. Failure to find a nonstatutory mitigating factor, even when it is supported by uncontradicted, substantial, and manifestly credible evidence, will not be disturbed absent an abuse of that discretion. *State v. Spears*, 314 N.C. 319, 333 S.E. 2d 242 (1985).

As noted previously, the trial judge found defendant's mental condition to be a statutory mitigating factor under N.C.G.S. § 15A-1340.4(a)(2)(d). Because the thrust of the requested nonstatutory factor was essentially identical to that of the statutory factor found, we discern no abuse of the trial judge's discretion. The term "mental condition" as used in section 15A-1340.4(a)(2)(d) includes not only mental diseases and illnesses, such as schizophrenia, but also psychological disorders, such as abused spouse syndrome, which are not necessarily categorized as diseases or illnesses. In this case the trial judge clearly considered the evidence relating to defendant's psychological paralysis—including evi-

dence of abused spouse syndrome—in determining that she suffered from a mental condition at the time of the offense. In refusing to find the requested nonstatutory factor, the judge was simply avoiding duplication and acted well within the bounds of his discretion.

We conclude that defendant received a fair sentencing hearing, free of prejudicial error.

No error.