2 F.3d 1149
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Larry Donnell BECTON, Petitioner-Appellant,
v.
Talmadge BARNETT; Attorney General of North Carolina,
Respondents-Appellees.
Larry Donnell BECTON, Petitioner-Appellee,
v.
Talmadge BARNETT; Attorney General of North Carolina,
Respondents-Appellants.
 Nos. 92-6363, 92-6391.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 6, 1993.
Decided: August 5, 1993.
 
 Appeals from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (CA-88-57-HC-BO)
 Argued: Judith Thomas Naef, Wilmington, North Carolina, for Appellant.
 Clarence Joe DelForge, III, Assistant Attorney General, North Carolina Department of Justice, Raleigh, North Carolina, for Appellees.
 On Brief: Lacy H. Thornburg, Attorney General, North Carolina Department of Justice, Raleigh, North Carolina, for Appellees.
 E.D.N.C.
 AFFIRMED.
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 OPINION
 BUTZNER, Senior Circuit Judge:
 
 
 1
 Larry Becton appeals the district court's dismissal of two of his claims seeking habeas corpus relief pursuant to 28 U.S.C. Sec. 2254. The state of North Carolina cross-appeals the district court's grant of a portion of Becton's petition for habeas corpus relief entitling him to a new sentencing hearing. We affirm the district court's judgment.
 
 
 2
 * Becton's petition is before us for a second time. The facts of Becton's psychological troubles and criminal activity culminating in his incarceration by the state of North Carolina are set forth in detail in Becton v. Barnett, 920 F.2d 1190, 1190-92 (4th Cir. 1990) (Becton I ). However, as some familiarity with Becton's criminal and psychological history is necessary to understand this case, we recount the facts and case history in brief below.
 
 
 3
 Larry Becton was first evaluated in Dorothea Dix Hospital in November 1981 to determine his competency to stand trial for charges of assault with the intent to commit rape and first degree burglary. Although he was found competent to stand trial, he was diagnosed as having a mixed personality disorder with some antisocial features, as well as a history of substance abuse. In July 1982 he was again sent to Dorothea Dix and evaluated, and again found to be competent.
 
 
 4
 In December 1982, Becton was involuntarily admitted to Cherry Hospital by his family. At the time Becton was demonstrating paranoia, confusion, and delusional behavior which manifested itself in auditory hallucinations as well as in recurrent fantasies that he was a spy for the United States Army. He was diagnosed as having acute undifferentiated schizophrenia, and psychiatric treatment, including the administration of psychotropic medication, was recommended. He was released from Cherry Hospital in mid-January 1983, but was readmitted shortly thereafter and diagnosed as having chronic undifferentiated schizophrenia with acute exacerbation. After his discharge in February 1983, he sporadically went to the Lenoir County Mental Health Clinic, but he apparently did not continue taking his psychotropic medication. He failed to keep appointments in April, 1983, and the clinic closed its file.
 
 
 5
 In August 1983, Becton was arrested for raping and robbing an elderly woman. He was indicted in October 1983 and tried and convicted in January 1984. As we observed in Becton I:
 
 
 6
 After conviction and incarceration, Becton's psychological troubles continued.
 
 
 7
 In February 1984, Becton was admitted to the mental ward for exhibiting psychotic behaviors....
 
 
 8
 In March 1985, Becton was admitted to the mental ward for exhibiting strange behavior including walking like a chicken and barking like a dog.
 
 
 9
 In May 1985, Becton was again admitted to the mental ward for experiencing auditory hallucinations and suicidal thoughts....
 
 
 10
 In June 1987, Becton showed signs of decompensation which included rambling speech. In August 1987, Becton remained delusional, claiming to work for the Army.
 
 
 11
 In April 1988, Becton was treated for being delusional....
 
 
 12
 This summary of Becton's psychological problems shows that Becton has periods of extreme mental illness. He also has periods where he shows few signs of illness.
 
 
 13
 Becton I, 920 F.2d at 1191.
 
 
 14
 Becton never filed a notice of appeal for his January 1984 conviction. He subsequently filed three pro se motions in state court which alleged ineffective assistance of counsel for failing to appeal his conviction and for failing to investigate his mental competency. After the state court summarily denied these motions, Becton filed the same ineffectiveness claims in his habeas petition. The district court denied Becton's petition without an evidentiary hearing, but we vacated this denial and remanded the case to the district court with instructions to conduct an evidentiary hearing into Becton's ineffectiveness claims. Becton I, 920 F.2d at 1196.
 
 
 15
 A magistrate judge conducted an evidentiary hearing and wrote a report and recommendation, which the district court accepted. The district court dismissed Becton's ineffectiveness claims regarding his counsel's failure to investigate his competency to stand trial and failure to offer insanity as a defense. The district court also held that Becton was entitled to a new sentencing hearing with a right to appeal due to the ineffective assistance of counsel arising from his counsel's failure to investigate Becton's mental competency for mitigating factors for sentencing as well as for counsel's failure to inform Becton of his absolute right to appeal his criminal conviction.
 
 II
 
 16
 Becton argues that the district court erred in holding that counsel was not ineffective for failing to investigate either Becton's competency to stand trial or the possibility of an insanity defense. In deciding claims of ineffective assistance, we examine whether counsel's performance was objectively reasonable. If we conclude that it was not, we must decide whether counsel's unreasonable performance prejudiced his or her client by affecting the outcome of the case. Strickland v. Washington, 466 U.S. 668, 687 (1984).
 
 
 17
 Becton relies heavily on an analogy between his case and that of Wood v. Zahradnick, 578 F.2d 980 (4th Cir. 1978). In Wood, the defendant was accused of raping an elderly woman. We held that the defendant's lawyer "was not entitled to rely upon his unsubstantiated belief about the defendant's mental condition at the time of the rape" where his crime was "so senseless" that any competent lawyer would have pursued the possibility of an insanity defense. Wood, 578 F.2d at 982. We noted the facial similarity between Wood and this case in Becton I, 920 F.2d at 1193.
 
 
 18
 Becton argues that the "senseless" nature of his crime was such that counsel should have been alerted to the need for a competency evaluation as well as preparation for a possible insanity defense. However, the facts as adduced at the evidentiary hearing and found by the district court demonstrate that the performance of Becton's counsel was not objectively unreasonable, and they serve to highlight the differences between Wood and the case at hand. In Wood the defendant was suffering from withdrawal symptoms from heroin and alcohol during his interview with counsel.
 
 
 19
 Becton appeared to be lucid and rational during his interview with his lawyer. Although Becton now complains that counsel observed that he did not "open up" to him during their discussions, such reticence is hardly cause for finding his counsel incompetent. Becton was employed at the time he committed the crime and for several days afterwards until his arrest. Becton and his lawyer discussed the two previous findings of competency on the earlier, unrelated rape charges, and together they determined that no purpose would be served by submitting Becton to yet another competency evaluation. Additionally, unlike the evidence in Wood, which disclosed that the criminal and his victim had known each other for years, Becton and his victim were not acquainted. After raping the victim, Becton stole her money and the next day returned to work. Becton's conferences with his attorney, the facts of the crime, and Becton's employment before and after the crime sufficiently distinguish this case from Wood.
 
 
 20
 We cannot require counsel to pursue an insanity defense when the facts available to him included Becton's lucid demeanor when conferring with counsel and two recent evaluations establishing Becton's competency. Such information does not indicate insanity. We agree with the district court that counsel's performance in determining not to offer an insanity defense or conduct another evaluation of Becton's mental condition before trial did not fall below the level of "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688.
 
 III
 
 21
 The district court found that counsel's representation was ineffective because of his failure to investigate Becton's mental health background for purposes of offering mitigating evidence at sentencing. The court held that Becton's counsel failed to take advantage of the benefit afforded by N.C. Gen. Stat. Sec. 15A-1340.4(a)(2)(d), which allows the sentencing judge to consider as a mitigating factor evidence that "[t]he defendant was suffering from a mental or physical condition that was insufficient to constitute a defense but significantly reduced his culpability for the offense."
 
 
 22
 The mitigating evidence which Becton's counsel chose to place before the sentencing court was meager. The evidence consisted in its entirety of Becton's age, 23; level of education achieved, 9th grade; marital status, single, no children; housing arrangements, living alone in Kinston, North Carolina; and employment at a bakery.
 
 
 23
 Knowledge that Becton had been twice evaluated for competency should have alerted his attorney that records of his mental health existed. Questioning of Becton or his family would undoubtedly disclose his involuntary commitment to Cherry Hospital because of confusion and delusional behavior. Investigation at Cherry Hospital would have disclosed that he was diagnosed as having chronic undifferential schizophrenia.
 
 
 24
 A North Carolina trial judge "has a duty to find a statutory mitigating factor when the evidence in support of the factor is uncontradicted, substantial and manifestly credible." State v. Holden, 321 N.C. 689, 695, 365 S.E.2d 626, 629 (1988). But a trial judge cannot discharge his duty unless the existence of a statutory mitigating factor is brought to his attention. A defendant has the burden of proving mitigating factors. State v. Taylor, 309 N.C. 570, 576-77, 308 S.E.2d 302, 307 (1983). Consequently, it is reasonable to require defense counsel to investigate the mental condition of a client who is known to have had symptoms of mental illness. Failure to satisfy this obligation frustrates the intent of the legislature which devised a procedure that is based on presumptive sentences modified by weighing aggravating and mitigating factors for increasing or decreasing punishment. See N.C. Gen. Stat. Sec. 15A-1340.4.
 
 
 25
 The district court correctly identified the pertinent statutory mitigating factor as N.C. Gen. Stat. Sec. 15A-1340.4(a)(2)(d). The medical records documenting his schizophrenia were uncontradicted, substantial, and credible. The decision whether, and to what extent, this evidence reduced Becton's culpability was a function of the trial judge, not Becton's attorney. See Holden, 321 N.C. at 696, 365 S.E.2d at 630.
 
 
 26
 In agreement with the district court, we conclude that Becton's counsel, at sentencing, did not satisfy the standard of reasonable assistance prescribed by Strickland, 466 U.S. at 688.
 
 
 27
 Becton was undeniably prejudiced by the failure of counsel to investigate and present mitigating evidence of mental illness. The sentencing court increased the presumptive sentence of 12 years for rape to 30 years. It found one aggravating factor-commission of the crime while on pretrial release-but no mitigating factors. Had counsel presented evidence of Becton's mental illness in accordance with the North Carolina statute, we believe that there is a reasonable probability that the trial court would not have departed upward a full 18 years. Becton has satisfied the requirement to show prejudice mandated by Strickland, 466 U.S. at 694-96.
 
 IV
 
 28
 The state asserts that the district court also erred in holding that counsel was ineffective for failing to inform Becton of his absolute right to appeal the adverse verdict.
 
 
 29
 North Carolina guarantees a defendant who has been found guilty an appeal as a matter of right. N.C. Gen. Stat.Sec. 15A-1444(a). To exercise this right, he is entitled to counsel. Douglas v. California, 372 U.S. 353, 357-58 (1963).
 
 
 30
 In order to assist a defendant effectively, counsel must "advise [the defendant] of his right to appeal, the manner and time in which to appeal and whether the appeal has any hope of success." Nelson v. Peyton, 415 F.2d 1154, 1157 (4th Cir. 1969). Although a defendant may be guided by counsel's advice about the poor prospects of an appeal, he must be advised of his right to appeal before he makes a decision to waive appeal. Shiflett v. Virginia, 447 F.2d 50, 53-54 (4th Cir. 1971).
 
 
 31
 At the evidentiary hearing, Becton's counsel admitted that Becton "said something about appealing" after he was found guilty. Counsel then told Becton that "an appeal would be useless," and Becton acquiesced. Becton's counsel admitted that he did not recall informing Becton of his right to appeal regardless of counsel's opinion.
 
 
 32
 The district court held that the facts "as developed at the evidentiary hearing, show that Becton's trial counsel failed to advise him of his full complement of appellate rights as required by Nelson." Becton v. Barnett, No. 88-57-HC-BO, slip op. at 7 (E.D.N.C. Mar. 4, 1992). This finding is amply supported by the record. Becton has been denied the effective representation of counsel with respect to appeal of both his conviction and sentencing. Nelson, 415 F.2d at 1156. Becton need not prove that his appeal would have been successful in order to demonstrate that his counsel was ineffective. See Anders v. California, 386 U.S. 738, 741-45 (1967).
 
 V
 
 33
 The state objects that Becton has not exhausted his state remedies, as required by 28 U.S.C. Sec. 2254, with respect to his claims that counsel ineffectively failed to investigate his mental health background for mitigating factors at sentencing and failed to inform him of his appellate rights. The district court found that Becton's state pro se habeas petitions put the state on sufficient notice of these claims. We find no cause for reversal in this disposition of the exhaustion issue. The state's reliance on Adams v. Aiken, 965 F.2d 1306 (4th Cir. 1992), does not require a different result. In Adams the claim was not raised in either the state or federal district court habeas corpus proceedings. It was raised for the first time in his federal appeal. 965 F.2d at 131314.
 
 
 34
 The judgment of the district court is affirmed.
 
 AFFIRMED