NO. COA13-437

NORTH CAROLINA COURT OF APPEALS

Filed:  7 January 2014

STATE OF NORTH CAROLINA

　　v.                                    Wake County
                                          No. 08 CRS 85092,
                                              10 CRS 0651

ALLEGRA ROSE DAHLQUIST


Appeal by defendant from judgments entered 15 November 2010 by Judge Paul C. Ridgeway in Wake County Superior Court.  Heard in the Court of Appeals 24 September 2013.

> *Attorney General Roy Cooper, by Assistant Attorney General Teresa M. Postell, for the State.*
>
> *Rudolf Widenhouse & Fialko, by M. Gordon Widenhouse, Jr., for defendant-appellant.*


McCULLOUGH, Judge.


Defendant Allegra Rose Dahlquist appeals from judgments entered upon pleading guilty to second-degree murder, two counts of conspiracy to commit murder, and attempted murder.  Defendant seeks a new sentencing hearing arguing that the trial court failed to find two mitigating factors and that the trial court erroneously relied on evidence obtained from the trial and sentencing hearing of her co-defendants.  After careful review, we find no error.

I. Background

On 16 December 2008, defendant Allegra Rose Dahlquist was indicted for murder and conspiracy to commit murder for events that occurred on 30 November 2008. On 9 February 2010, defendant was indicted for attempted first-degree murder and conspiracy to commit first-degree murder for events that occurred on 25 November 2008.

On 13 August 2010, defendant pled guilty to the following: second-degree murder, two counts of conspiracy to commit murder, and attempted murder. As part of defendant's plea agreement, the State agreed to reduce the first-degree murder charge to second-degree murder. Defendant agreed "to cooperate with Wake County investigators and to testify truthfully and consistently with any statement made to investigators if called upon to do so."[1]

At her 13 August 2010 plea hearing, the State proffered the following as a factual basis for the guilty plea: Defendant, Aadil Kahn ("Kahn")[2], Ryan Hare ("Hare") and Drew Shaw ("Shaw") all attended Apex High School and were friends. Defendant and Hare

---

[1] Defendant testified at co-defendant Ryan Patrick Hare's trial. *See State v. Hare*, __ N.C. App. __, 722 S.E.2d 14 (2012) (unpublished).
[2] Khan pled guilty to second-degree murder, conspiracy to commit murder, attempted first-degree murder, and conspiracy to commit first-degree murder for the events that occurred on 25 and 30 November 2008. *See State v. Khan*, 366 N.C. 448, 449-50, 738 S.E.2d 167, 168-69 (2013).

became involved in a romantic relationship. At some point, their relationship ended, and defendant began a romantic relationship with Matthew Silliman ("Silliman"), the victim. Hare was jealous of the relationship between Silliman and defendant. Eventually, defendant and Hare resumed their relationship in November 2008. Hare began to form a plan to kill Silliman. Sometime in mid-November, Kahn was brought into the conspiracy to kill Silliman. Defendant was brought into the conspiracy one or two weeks prior to 25 November 2008.

On the night of 25 November 2008, defendant and Silliman were riding around Apex in defendant's vehicle. They picked up Hare and Kahn in her vehicle. Once they reached a rural road in Wake County, Hare put a zip tie around Silliman's throat in an unsuccessful attempt to strangle him. Kahn had also planned to taser Silliman, but the taser failed to work.

Thereafter, Silliman was taken to an abandoned house owned by defendant's family. Silliman stayed at this house from 25 November 2008 until his death on 30 November 2008.

Silliman remained at the abandoned house during this time period because defendant, Kahn, and Hare had devised a plan and told Silliman that an individual by the name of Roger was "after

him and that [Silliman] needed to get out of town, and they were proposing train departure times for him to leave during that week."

On 29 November 2008, defendant participated in digging a grave for Silliman. On 30 November 2008, defendant picked up Shaw from his residence. Kahn and Hare were already with Silliman. Shaw's role involved waiting outside the abandoned house, holding a baseball bat, in the event that Silliman attempted to escape.

Defendant read Silliman tarot cards and an e-mail in an effort to distract him. While Silliman was distracted, Hare came up behind Silliman and hit him with a hammer but the hammer did not faze Silliman.

At this point, Shaw left the abandoned house and defendant took Shaw back to his residence. Defendant then returned to the house, at which time Silliman had been drinking wine mixed with horse tranquilizers. Silliman became "groggy" and started to fall asleep. Silliman's hands were zip tied in front of him and his feet were zip tied together. Duct tape was put over Silliman's mouth and a plastic bag was placed over his head. Defendant placed a zip tie over the plastic bag around Silliman's neck and Hare tightened the zip tie. Silliman's cause of death was suffocation and asphyxiation.

On 2 December 2008, Shaw confessed to his grandmother that he had been involved in this incident and named defendant, Kahn, and Hare as fellow participants.

On 15 November 2010, defendant was sentenced in the aggravated range to two consecutive terms of 180 to 225 months.

The trial court found and defendant admitted to the existence of the aggravating factor that "defendant took advantage of a position of trust or confidence, including a domestic relationship, to commit the offense." The trial court found as mitigating factors that defendant "aided in the apprehension of another felon," "defendant voluntarily acknowledged wrongdoing in connection with the offense to a law enforcement officer at an early stage of the criminal process," and "defendant has accepted responsibility for the defendant's criminal conduct." The trial court then determined that the aggravating factors outweighed the mitigating factors and that the aggravated sentence was justified.

Defendant did not give notice of appeal at that time. On 17 December 2012, defendant filed a petition for writ of certiorari to this Court. This petition was granted by order entered on 28 December 2012.

## II. Discussion

Defendant advances the following issues on appeal: whether the trial court erred by (A) failing to find two statutory mitigating factors and (B) relying on evidence from Hare's trial and Khan's sentencing hearing to impose an aggravated sentence.

## A. Mitigating Factors

Defendant argues that the trial court failed to find two statutory mitigating factors: (1) that defendant's "age, or immaturity, at the time of the commission of the offense significantly reduced defendant's culpability for the offense" pursuant to N.C. Gen. Stat. § 15A-1340.16(e)(4) and (2) that "defendant has a support system in the community" pursuant to N.C. Gen. Stat. § 15A-1340.16(e)(18).

### (i). Standard of Review

A "[f]inding that a mitigating factor exists is within the trial judge's discretion[.]" *State v. Kinney*, 92 N.C. App. 671, 678, 375 S.E.2d 692, 696 (1989). "[T]he trial judge has wide latitude in determining the existence of aggravating and mitigating factors, for it is he who observes the demeanor of the witnesses and hears the testimony." *State v. Canty,* 321 N.C. 520, 524, 364 S.E.2d 410, 413 (1988) (citation and quotations omitted).

It is well established that "[t]he defendant bears the burden of proof to establish the existence of mitigating factors." *State*

*v. Thompson*, 314 N.C. 618, 625, 336 S.E.2d 78, 82 (1985) (citation omitted).

> [A] trial court must find a statutory mitigating factor if that factor is supported by uncontradicted, substantial, and credible evidence. To show that the trial court erred in failing to find a mitigating factor, the evidence must show conclusively that this mitigating factor exists, i.e., no other reasonable inferences can be drawn from the evidence. Even uncontradicted, quantitatively substantial and credible evidence may simply fail to establish, by a preponderance of the evidence, any given factor in aggravation or mitigation. While evidence may not be ignored, it can be properly rejected if it fails to prove, as a matter of law, the existence of the mitigating factor.

*State v. Richardson*, 341 N.C. 658, 674-75, 462 S.E.2d 492, 503 (1995) (citations and quotations omitted).

## 1. N.C. Gen. Stat. § 15A-1340.16(e)(4)

First, defendant argues that the trial court erred by failing to find a mitigating factor when evidence supporting N.C.G.S. § 15A-1340.16(e)(4), that defendant's "age, immaturity, or limited capacity at the time of the commission of the offense significantly reduced the defendant's culpability for the offense[,]" was supported by uncontradicted and substantial evidence. Specifically, defendant argues that she was only seventeen (17) years old at the time of the crimes and that she presented expert

testimony as to "her immaturity, coupled with her depression and susceptibility to control by her peers, especially Ryan Hare."

The mitigating factor listed under N.C.G.S. § 15A-1340.16(e)(4) "includes two inquiries – one as to immaturity (or mental capacity) and one as to the effect of such immaturity upon culpability." *State v. Moore*, 317 N.C. 275, 280, 345 S.E.2d 217, 221 (1986) (citation omitted). "[A]ge alone is insufficient to support this factor. By its use of the term 'immaturity,' the General Assembly contemplated an inquiry which is 'broader than mere chronological age' and which is 'concerned with all facts, features, and traits that indicate a defendant's immaturity and the effect of that immaturity on culpability.'" *State v. Barton*, 335 N.C. 741, 751, 441 S.E.2d 306, 312 (1994) (citations and quotation marks omitted). We emphasize that "[i]t is within the trial judge's discretion to assess the conditions and circumstances of the case in determining whether the defendant's immaturity or limited mental capacity significantly reduced culpability." *State v. Holden*, 321 N.C. 689, 696, 365 S.E.2d 626, 630 (1988).

We find *State v. Holden*, 321 N.C. 689, 365 S.E.2d 626 (1988), to be instructive. In *Holden*, a seventeen (17) year old defendant pled guilty to the second-degree murder of her infant daughter.

The defendant argued that the trial court erred by failing to find the statutory mitigating factor that her immaturity or limited mental capacity at the time of the murder significantly reduced her culpability for the offense. *Id.* at 696, 365 S.E.2d at 630. The Supreme Court held that although there was uncontradicted evidence that the defendant had the emotional maturity of a twelve or thirteen year old and that she had a diminished intellectual capacity and an IQ of 70, evidence of "planning, weighing of options, and covering her own tracks tended to negate defendant's claim that she was unable to appreciate her situation or the nature of her conduct." *Id.* at 696-97, 365 S.E.2d at 630. The *Holden* Court held that the trial court did not abuse its discretion in failing to find that the defendant's culpability was reduced by her immaturity or limited mental capacity. *Id.*

In the present case, defendant was seventeen years old at the time of the crimes. Defendant's expert witness Dr. Moira Artigues, an expert in forensic psychiatry, testified that defendant's emotional maturity level was that of an eleven (11) or twelve (12) year old. Dr. Artigues also testified that defendant had trouble academically and socially, was suffering from depression and anxiety, was "smashed down by life," and was "easy prey" for manipulation by Hare. However, similar to *Holden*, the State's

summary of the facts conflicted with defendant's contention that her youth and immaturity reduced her culpability for the crime. The State's summary of the facts tended to show that defendant participated in the planning of the events that occurred on 25 November and throughout 30 November 2008. Defendant actively participated in carrying out the murder of Silliman by such actions as distracting him, placing the zip tie around his neck, and assisting in digging a grave for him. Further, after the murder of Silliman, she attempted to cover her tracks by disposing of his belongings and telling Silliman's family that she did not know Silliman's whereabouts. Evidence of planning, actively participating in the crimes on at least two separate dates, and covering her own tracks all "tend[] to negate defendant's claim that she was unable to appreciate her situation or the nature of her conduct." *Holden*, 321 N.C. at 696-97, 365 S.E.2d at 630.

Based on the foregoing, we hold that defendant has failed to meet her "burden of showing that the evidence compels the finding and that no contrary inference can reasonably be drawn." *State v. Colvin*, 92 N.C. App. 152, 160, 374 S.E.2d 126, 132 (1988). Accordingly, we are unable to hold that the trial court abused its discretion in failing to find the mitigating factor pursuant to N.C.G.S. § 15A-1340.16(e)(4). Defendant's argument is overruled.

## 2. N.C. Gen. Stat. § 15A-1340.16(e)(18)

Next, defendant argues that the trial court erred by failing to find a mitigating factor where there was uncontradicted and substantial evidence presented as to whether defendant had a "support system in the community" pursuant to N.C. Gen. Stat. § 15A-1340.16(e)(18). We disagree.

Defendant directs us to the following testimony of Dr. Artigues in support of her argument:

> [Defendant] has repaired her relationship with her mother and grandmother. Her mother and grandmother have stood by her through all of this and I think that has demonstrated to [defendant] that they love her. She was able to say to me that she was grateful for them one of the last times I visited her, and that was very different from how she had been speaking about her relationship with them before.

Defendant also argues that Dr. Artigues testified that defendant had received psychiatric treatment after her arrest.

While the foregoing evidence supports the conclusion that defendant has restored her relationship with her family – specifically her mother and grandmother – and that defendant has received some psychiatric treatment, the evidence does not speak to the existence of "a support system in the community." In *State v. Kemp*, 153 N.C. App. 231, 569 S.E.2d 717 (2002), our Court held that "[t]estimony demonstrating the existence of a large family in

the community and support of that family alone is insufficient to demonstrate the separate mitigating factor of a community support system." *Id.* at 241-42, 569 S.E.2d at 723. Here, the testimony defendant relies on simply fails to establish, by a preponderance of the evidence, the existence of a community support system as a statutory mitigating factor. Thus, we hold that the trial court did not abuse its discretion and defendant's argument is overruled.

### B. Evidence Considered during Sentencing Hearing

Next, defendant argues that during her sentencing hearing, the State failed to present any evidence of her role in the offenses and that the trial court erroneously relied on evidence obtained from the trial of her co-defendant Hare and from the sentencing hearing of her co-defendant Khan to impose an aggravated sentence. Defendant contends that because of this error, she is entitled to a new sentencing hearing. We disagree.

Defendant relies on *State v. Benbow*, 309 N.C. 538, 308 S.E.2d 647 (1983), for the contention that a trial court cannot rely on evidence from another proceeding in fashioning a defendant's sentence. In *Benbow*, the defendant and three other co-defendants robbed and murdered an owner of a warehouse on 28 December 1981. The defendant agreed to testify for the State in the trial of his co-defendants in return for acceptance of a plea to second-degree

murder. *Id.* at 540, 308 S.E.2d at 648-49. At the defendant's sentencing hearing, the defendant and the State stipulated to a particular set of facts as an accurate narration of the events leading up to the victim's death. *Id.* at 540, 308 S.E.2d at 649. Defendant's evidence in mitigation consisted of the testimony of several witnesses. The State presented no rebuttal evidence and relied on the evidence presented during the trials of the defendant's co-defendants to support the aggravating factors. *Id.* at 543, 308 S.E.2d at 650. The Supreme Court stated the following:

> We emphasize that a defendant's liability for a crime . . . is determined at the guilt phase of a trial or, as in the case *sub judice*, by a plea. At sentencing the focus must be on the offender's individual culpability. It is therefore proper at sentencing to consider the defendant's actual role in the offense as opposed to his legal liability for the acts of others.
>
> . . .
>
> [A]t any sentencing hearing held pursuant to a plea of guilty, reliance on evidence from the trials of others connected with the same offense is improper absent a stipulation. Even with such a stipulation reliance exclusively on such record evidence from other trials (in which the defendant being sentenced had no opportunity to examine the witnesses) as a basis for a finding of an aggravating circumstance may constitute prejudicial error. In such other trials the focus is necessarily upon the culpability of others and not on the culpability of the defendant being sentenced. Thus, by proper stipulation and in

the interests of judicial economy, the sentencing judge may consider the evidence from such other trials, but only as incidental to his present determination of defendant's individual culpability as a factor in sentencing.

*Id.* at 546-49, 308 S.E.2d at 652-54.

In the present case, however, defendant repeatedly relied on evidence gained from her testimony at Hare's trial and evidence obtained from Khan's sentencing hearing in support of her arguments that the trial court should find the existence of mitigating factors:

> [Defendant's Counsel:] I was in the courtroom, just like the Court was, when I heard her testify to it. . . . and while I was sitting there listening to her testify the lawyer part of me was saying, "Oh, my gosh, Allegra, you don't have to be so graphic about yourself," but she was, because she was absolutely, purely honest to this court and to the jury about her responsibility and about what happened, and the truth is she was the only one that was, and the purity of that exists somewhere in the evil of what happened.
>
> . . . .
>
> [Defendant's Counsel:] I have an exhibit. It's Defendant's Exhibit Number 1. . . . This, Your Honor, is a document that was testified to at trial, or at least maybe at the hearing of Mr. Khan[.]
>
> . . . .
>
> [Dr. Moira Artigues (defendant's witness):] To complete my evaluation [of defendant] I

looked at selected discovery materials. This case was unique in that I was able to watch much of Ryan Hare's trial on the WRAL archives[.]

. . . .

[Dr. Moira Artigues:] I was able to watch [the prosecutor in Hare's trial's] closing, and in that he summarized the evidence very well, and what [the prosecutor] concluded was that [defendant] had been manipulated by Ryan Hare[.]

. . . .

[Defendant's Counsel:] You heard her testify at the [Hare] trial they were doing the things that they were doing at the end to [Silliman.] [SIC]

. . . .

[Defendant's Counsel:] But Your Honor, I think if you listen to Dr. Artigues, and if you watched her – which I know you did – when she testified, I know you saw the raw emotion and reality and honesty that came out of this young woman – I know you saw it.

Based on the foregoing instances, we hold that defendant is precluded from arguing that the trial court's consideration of such evidence in imposing an aggravated sentence amounted to error. Section 15A-1443(c) of the North Carolina General Statutes provides that "[a] defendant is not prejudiced by the granting of relief which he has sought or by error resulting from his own conduct." N.C. Gen. Stat. § 15A-1443(c) (2011). "Thus, a

defendant who invites error has waived his right to all appellate review concerning the invited error, including plain error review." *State v. Hope*, __ N.C. App. __, __, 737 S.E.2d 108, 111 (2012) (citation omitted). Accordingly, defendant has waived his right to appellate review of this issue.

Affirm.

Judges McGEE and DILLON concur.