STATE OF NORTH CAROLINA v. ROCHELLE DANIEL

No. 85A85

(Filed 7 April 1987)

**1. Criminal Law § 138.27— aggravating factors—victim's youth—position of trust—same evidence not used for both factors**

  In a sentencing hearing for second degree murder of defendant's child, the trial court did not improperly use the same evidence of the victim's infancy in finding as aggravating factors that the victim was very young and that defendant took advantage of a position of trust or confidence in order to commit the offense since the latter aggravating factor was not grounded in the youth of defendant's child but more fundamentally in the child's dependence upon defendant. N.C.G.S. § 15A-1340.4(a)(1).

**2. Criminal Law § 138.40— acknowledgment of wrongdoing mitigating circumstance—meaning of "voluntary"**

  An acknowledgment of wrongdoing is "voluntary" within the meaning of the statutory voluntary acknowledgment of wrongdoing mitigating circumstance if the acknowledgment is admissible against defendant. N.C.G.S. § 15A-1340.4(a)(2)l.

**3. Criminal Law § 138.40— voluntary acknowledgment of wrongdoing mitigating circumstance—defendant's motives irrelevant**

  The statutory voluntary acknowledgment of wrongdoing mitigating circumstance should be found by the court where the evidence shows an unrepudiated acknowledgment of guilt, admissible against defendant, made before arrest or at an early stage in the criminal process, even if defendant's motives for the acknowledgment are suspect. *State v. Sweigart*, 71 N.C. App. 383, 322 S.E. 2d 188 (1984) is overruled to the extent it is inconsistent with such holding.

**4. Criminal Law § 138.30— erroneous failure to find statutory mitigating circumstance—necessity for new sentencing hearing**

  Whenever there is error in a sentencing judge's failure to find a statutory mitigating circumstance and a sentence in excess of the presumptive is imposed, the matter must be remanded for a new sentencing hearing.

  Justice MEYER dissenting.

APPEAL by defendant from judgment of *Allen, J.*, entered at the 1 October 1984 Criminal Session of BUNCOMBE County Superior Court, imposing a life sentence pursuant to defendant's plea of guilty to second degree murder. Reargued 11 March 1987.

*Lacy H. Thornburg, Attorney General, by Steven Mansfield Shaber and Catherine C. McLamb, Assistant Attorneys General, for the state.*

*J. Robert Hufstader, Public Defender, for defendant appellant.*

EXUM, Chief Justice.

Defendant pled guilty to murdering her newborn child. The sentence imposed, life imprisonment, is in excess of the presumptive sentence for second degree murder, which is fifteen years' imprisonment. N.C.G.S. §§ 15A-1340.4(f) (1983), 14-17 (1986). The first question presented is whether the trial court erred in finding as aggravating factors that the victim was very young and that defendant took advantage of a position of trust or confidence. The second question presented is whether the trial court erred in failing to find as a mitigating factor that defendant voluntarily acknowledged wrongdoing before her arrest or at an early stage in the investigation. We find error only in the trial court's failure to find this mitigating circumstance and order that defendant be given a new sentencing hearing.

On 16 April 1984 a criminal investigator for the Buncombe County Sheriff's Department was called to investigate the contents of a plastic garbage bag that had been found near Black Mountain, North Carolina. The bag contained the remains of a black female infant and household trash, including a discarded piece of schoolwork bearing the name of defendant's younger sister. The officer traced the paper to the home of defendant's mother, advised the mother and her three daughters of their rights, and questioned them about the garbage bag. None acknowledged having any information regarding the bag or its contents.

Later the same day a second investigator interviewed defendant at her place of work. Defendant reiterated that she knew nothing about the bag or the baby. That evening, defendant and her mother and sisters agreed to come to the sheriff's department for polygraph tests and additional interviews. During questioning preliminary to the polygraph test, defendant was told the state had evidence indicating she was the mother of the child. The investigating officer testified that defendant asked about its birth-

date "in an attitude of, 'If you know so much, then when was the child born?'" When the officer responded that it had been born the preceding Wednesday, defendant grew silent and began to cry. Subsequently she was advised of her *Miranda* rights, signed a waiver, and recounted the events occurring on Wednesday, 11 April.

Defendant said she had given birth shortly after her younger sisters had left for school. Her baby appeared healthy at birth and had gone to sleep shortly afterwards. When the infant later awakened and began to cry, defendant grew concerned that her mother's boyfriend would hear the cries. Defendant got a garbage bag from the kitchen, laid old clothes in the bottom, and placed the child on top of them. She then put more clothes on top of the child to muffle her cries. Anxious that her mother's boyfriend would soon arise and discover the infant, defendant took the bag to her car and drove around awhile, looking for a place to dispose of the bag. She eventually drove to a wooded area on a road where her mother had once lived and tossed the bag over onto the side of the road. Defendant also said that two years earlier she had given birth after an extremely long and painful labor to a deformed male whose breathing was "ragged." She said she had wrapped the infant in a blanket, deposited it in a garbage bag, and disposed of it in the woods behind her house. Investigating officers could not find this child's remains.

After defendant made these statements she was placed under arrest and charged in a warrant with the murder of the child born in April 1984. Subsequently defendant was indicted for the first degree murder of this child. Pursuant to a plea arrangement, defendant pled guilty to murder in the second degree. A sentence commitment was not part of the arrangement. Under these circumstances, a sentencing judge must consider the aggravating and mitigating factors listed in N.C.G.S. § 15A-1340.4(a). *State v. Melton*, 307 N.C. 370, 298 S.E. 2d 673 (1983). Accordingly, the trial court found as mitigating factors that defendant had no record of criminal convictions, that she suffered from a mental condition that was insufficient to constitute a defense but that significantly reduced her culpability, and that she had been a person of good character or had enjoyed a good reputation in the community in which she lived. In addition to these factors, the trial judge found:

> The accused has been a good and responsible sister. The accused has been an obedient and extremely helpful daughter. The conduct of the accused between the offense date and sentencing date has been exemplary. The accused demonstrated a need and desire to assist in providing for her family. The accused fully cooperated with the investigating officers.

Despite these additional findings, the trial court refused to find the statutory factor that defendant had voluntarily acknowledged wrongdoing in connection with the offense to law enforcement officers prior to arrest or at an early stage of the criminal process. N.C.G.S. § 15A-1340.4(a)(2)l (1983).

[1] The trial court found as aggravating factors that the victim was very young and that defendant took advantage of a position of trust or confidence in order to commit the offense. N.C.G.S. § 15A-1340.4(a)(1)j, n (1983). Defendant now contends that the trial court's finding of the two aggravating factors was erroneously based on the same fact—the victim's infancy—in derogation of N.C.G.S. § 15A-1340.4(a)(1), which provides that "the same item of evidence may not be used to prove more than one factor in aggravation."

The fact of infancy was obviously the basis of the trial court's finding that the victim was very young. However, the aggravating factor that the defendant took advantage of a position of trust or confidence was grounded not in the youth of her child but more fundamentally in the child's dependence upon her. A finding of this aggravating factor depends no more on the youth of the victim than it does on the notion that confidence or trust in the defendant must repose consciously in the victim. Such a finding depends instead upon the existence of a relationship between the defendant and victim generally conducive to reliance of one upon the other. A relationship of trust or confidence existed because defendant was the child's mother and because she was singularly responsible for its welfare. The abuse of her parental role relates to defendant's character and conduct and was reasonably related to the purposes of sentencing. *State v. Goforth,* 67 N.C. App. 537, 539, 313 S.E. 2d 595, 596, *cert. denied,* 311 N.C. 765, 321 S.E. 2d 149 (1984). We therefore find it proper that both the child's youth and a relationship of trust or confidence were considered as independent aggravating factors in determining defendant's sentence.

The trial court erred, however, in refusing to find that "[p]rior to arrest or at an early stage of the criminal process, the defendant voluntarily acknowledged wrongdoing." N.C.G.S. § 15A-1340.4(a)(2)l. "When evidence in support of a particular mitigating or aggravating factor is uncontradicted, substantial, and there is no reason to doubt its credibility," it is error for the trial court not to find that factor. *State v. Jones*, 309 N.C. 214, 218-19, 306 S.E. 2d 451, 454 (1983).

All the evidence shows, without contradiction and with no reason to doubt its credibility, that defendant made her inculpatory statement before her arrest. The state concedes this statement was sufficient to "clearly establish her guilt of . . . a murder." We agree. Defendant's statement sufficed to provide the state not only with probable cause to arrest her, but also with enough evidence to convict her. The statement constituted a confession of guilt to the crime charged. We held in *State v. Graham*, 309 N.C. 587, 308 S.E. 2d 311 (1983), that a confession made before the issuance of a warrant or information, before the return of a true bill of indictment or presentment, or before arrest — whichever comes first — entitles defendant to a finding of the voluntary acknowledgment of wrongdoing mitigating circumstance.[1] Under *Graham*, defendant was entitled to have her acknowledgment of wrongdoing found as a mitigating circumstance provided it was voluntary.

The state argues that because defendant initially denied her guilt, confessed only after police indicated they knew the baby was hers, and never expressed any remorse about the crime, her confession was neither voluntary nor an acknowledgment of wrongdoing within the meaning of the statutory mitigating circumstance. The state takes the position that the policy behind this mitigating circumstance "is that a criminal who shows remorse for his actions displays a real possibility of rehabilitation which, in turn, must be considered in mitigation of his sentence."

We agree that this is the policy underlying this particular circumstance. *Id.; State v. Ahearn*, 307 N.C. 584, 300 S.E. 2d 689

---

1. *State v. Hayes*, 314 N.C. 460, 334 S.E. 2d 741 (1985), held that a defendant who later retracts or repudiates an earlier "inculpatory statement" that might have qualified for this mitigating circumstance is not entitled to a finding of the circumstance's existence. Here there was no retraction.

(1983). We note also that remorse is a subjective state of mind which is often not apparent; if apparent, it may not be sincere. In *State v. Graham*, the Court made clear that the existence of remorse, a subjective state of mind, was for the fact finder to determine. The Court also recognized that a confession may or may not be motivated by remorse. We held, however, that "[t]he defendant's motive in acknowledging his guilt at an early stage does not go to the *existence* of this mitigating factor, but goes to the *weight* the trial judge must give that factor." *Graham*, 309 N.C. at 590-91, 308 S.E. 2d at 314 (emphasis added). The Court further stated:

> On one end of the spectrum, a confession may be more than a simple admission of guilt, but rather an admission of culpability, responsibility, and remorse. As such, this factor becomes one of the most important and persuasive factors in mitigation of a defendant's sentence: embodied in the confession is the essence of the Fair Sentencing Act—a focus on the offender's individual culpability, his character and attitudes, and on the very real possibility of rehabilitation. On the other end of the spectrum the confession may be a simple admission of guilt, later challenged by motion to suppress as being the product of coercion, etc., or given for purposes of serving the defendant's own self-interests. Under these circumstances the factor, as we interpret it, becomes almost meaningless in terms of its mitigating value.

*Id.* at 591, 308 S.E. 2d at 315.

[2] As for the requirement that an acknowledgment of wrongdoing be "voluntarily" made, we hold that if the acknowledgment is admissible against defendant, it is voluntary within the meaning of this mitigating circumstance.

[3] We think it wise to make the test for the existence of this mitigating circumstance as objective as possible. "[A]ll circumstances which are transactionally related to the admitted offense and which are reasonably related to the purposes of sentencing must be considered during sentencing." *State v. Melton*, 307 N.C. at 378, 298 S.E. 2d at 679. Such circumstances include an unrepudiated acknowledgment of guilt, admissible against defendant, made before arrest or at an early stage in the criminal process, even if defendant's motives for the acknowledgment are

suspect. Defendant's pre-arrest statements to investigators meet this test, and therefore the trial court erred in not finding the statutory voluntary acknowledgment of wrongdoing mitigating circumstance. To the extent that *State v. Sweigart*, 71 N.C. App. 383, 322 S.E. 2d 188 (1984), is inconsistent with our holding in this case, it is overruled.

**[4]** We also conclude that failure to find this mitigating circumstance entitles defendant to a new sentencing hearing. We held in *State v. Ahearn*, 307 N.C. 584, 300 S.E. 2d 689, that "in every case in which it is found that the judge erred in a finding or findings in aggravation and imposed a sentence beyond the presumptive term, the case must be remanded for a new sentencing hearing." *Id.* at 602, 300 S.E. 2d at 701. The rationale for our holding in *Ahearn* was stated as follows:

> [A]ny error in a sentencing procedure gives rise to a twofold analysis. Reliance on a factor in aggravation determined to be erroneous may or may not have affected the balancing process which resulted in the decision to deviate from the presumptive sentence. Certainly there will be many cases where, on remand, the trial judge will properly reach the same result absent the erroneous finding. We repeat that the weight to be given any factor is within the sound discretion of the sentencing judge. The judge is not required to engage in a numerical balancing process. By the same token, our appellate courts should not attempt to second-guess the sentencing judge with respect to the weight given any particular factor. Nor should appellate courts engage in numerical balancing in order to determine whether a sufficient number of aggravating factors remain to 'tip the scales.'
>
> More important, however, it must be assumed that every factor in aggravation measured against every factor in mitigation, with concomitant weight attached to each, contributes to the *severity* of the sentence — the quantitative variation from the norm of the presumptive term. It is only the sentencing judge who is in a position to re-evaluate the severity of the sentence imposed in light of the adjustment.

*Id.* at 602, 300 S.E. 2d at 700-01.

This rationale applies with equal force to a sentencing judge's erroneous failure to find a circumstance that the legisla-

ture has determined to have mitigating value. It is simply impossible for an appellate court to say what effect the error in either case might have had on the ultimate sentence. Unlike capital sentencing procedures,[2] where a jury has only two choices, death or life imprisonment, a sentencing judge under the Fair Sentencing Act has a broad range of options. The judge's findings concerning aggravating and mitigating circumstances influence not only the decision whether to vary the sentence from the presumptive term, but also the decision as to *how much* to vary it.

For these reasons we conclude that whenever there is error in a sentencing judge's failure to find a statutory mitigating circumstance and a sentence in excess of the presumptive term is imposed, the matter must be remanded for a new sentencing hearing.

For error in failing to find the early acknowledgment of wrongdoing mitigating circumstance defendant is given a

New sentencing hearing.

Justice MEYER dissenting.

Believing as I do that defendant's acknowledgment of wrongdoing was not "voluntarily" made and that it thus does not meet the requirements of N.C.G.S. § 15A-1340.4(a)(2)l, I respectfully dissent.

On 16 April 1984 a criminal investigator in the Buncombe County Sheriff's Department was called to investigate the contents of a plastic garbage bag that had been found near Black Mountain, North Carolina. The bag contained the remains of a black female infant and some household trash, including a discarded piece of schoolwork bearing the name of defendant's younger sister. The officer traced the paper to the home of defendant's

---

2. In capital sentencing procedures, erroneous submission of an aggravating circumstance, *State v. Taylor*, 304 N.C. 249, 283 S.E. 2d 761 (1981), *cert. denied*, 463 U.S. 1213, 77 L.Ed. 2d 1398, *rehearing denied*, 463 U.S. 1249, 77 L.Ed. 2d 1456 (1983), or erroneous failure to submit a mitigating circumstance, *State v. Pinch*, 301 N.C. 1, 292 S.E. 2d 203, *cert. denied*, 459 U.S. 1056, 74 L.Ed. 2d 622 (1982), *rehearing denied*, 459 U.S. 1189, 74 L.Ed. 2d 1031 (1983), is not reversible *per se*; both kinds of error are subject to a harmless error analysis.

mother, advised the mother and her three daughters of their rights, and questioned them about the garbage bag. All denied having any information regarding the bag or its contents.

Later the same day a second investigator interviewed defendant at her place of work. Defendant reiterated that she knew nothing about the bag or the baby. That evening defendant and her mother and sisters agreed to come to the sheriff's department for polygraph tests and additional interviews. During questioning preliminary to the polygraph test, defendant was told the state had evidence indicating she was the mother of the child. The investigating officer testified that defendant asked about its birthdate "in an attitude of, 'If you know so much, then when was the child born?'" When the officer responded that it had been born the preceding Wednesday, defendant grew silent and began to cry. Subsequently she was again advised of her rights under *Miranda* and, after waiving them, recounted the events occurring on Wednesday, 11 April.

Defendant said she had given birth shortly after her younger sisters had left for school. Her baby appeared healthy at birth and had gone to sleep shortly afterwards. When the infant later wakened and began to cry, defendant grew concerned that her mother's boyfriend would hear the cries. Defendant got a garbage bag from the kitchen, laid old clothes in the bottom, and placed the child on top of the clothes and more clothes on top of the child to muffle her cries. Anxious that her mother's boyfriend would soon arise and discover the infant, defendant took the bag to her car and drove around awhile, looking for a place to dispose of the bag. She eventually drove to a wooded area on a road where her mother had once lived and tossed the bag over onto the side of the road. Defendant also said that two years earlier she had given birth to a male infant whose breathing had been "ragged." She said she had also wrapped this infant in a blanket, deposited it in a garbage bag, and disposed of it in the woods behind her house. Investigating officers could not find this child's remains. After defendant made these statements she was placed under arrest and charged in a warrant with the murder of the child born in April 1984.

The defendant first denied that she had given birth or knew anything about the baby, even after being confronted with the

fact that trash found in the bag with the body contained her younger sister's school papers. Only when faced with apparently overwhelming evidence of her guilt and the prospect of a polygraph test which might reveal her deception did she give up her futile denials and acknowledge that the baby was hers and describe the events surrounding its birth and disposal. Defendant evidenced no remorse for the death of either this or her previous child. I do not believe that under these circumstances the trial judge was compelled to find that the acknowledgment was voluntary within the requirement of the statutory mitigating factor.

I also disagree with the majority's holding that "if the acknowledgment [of guilt] is admissible against the defendant, it is voluntary within the meaning of this mitigating circumstance."

Whether this defendant was entitled to the mitigating circumstance depends on the meaning we attach to the word "voluntarily." The General Assembly clearly meant that more be shown than simply that the defendant acknowledged wrongdoing before arrest or early in the process, for it specifically provided that before the acknowledgment qualifies as a statutory mitigating factor, the acknowledgment be voluntary.

In the context of criminal prosecutions and confessions, the word "voluntary" has not been a term of easy application and universally accepted meaning. The majority holds that "if the acknowledgment is admissible against the defendant, it is voluntary within the meaning of this mitigating factor." However, the General Assembly did not provide that the acknowledgment of wrongdoing should be a mitigating factor depending upon its constitutional admissibility; rather the statute mandates that the trial judge determine whether the acknowledgment was given "voluntarily."

Just as a defendant should not be denied this mitigating factor because other factors preclude its admissibility of a confession, he should not be automatically entitled to it as a matter of law because it was admitted against him. Admissibility of a confession may be denied because of factors, such as failure of the prosecuting authorities to give *Miranda* warnings (*Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694 (1966)) or failure to provide counsel, *Brewer v. Williams*, 430 U.S. 387, 51 L.Ed. 2d 424, *reh'g denied*, 431 U.S. 925, 53 L.Ed. 2d 240 (1977), which do not cause

the confession to be involuntary. Inadmissibility of the confession as evidence would not preclude use of the statement as a mitigating factor. Neither should a determination that the confession was given under circumstances that make it admissible as evidence at trial, and thus necessarily voluntary within the interpretation of Fifth Amendment requirements, automatically require the trial judge to find that it was given voluntarily within the meaning of N.C.G.S. § 15A-1340.4(a)(2)l. Indeed, this Court has already held that if a defendant retracts or repudiates a confession previously given, he is not entitled to this mitigating factor. *State v. Hayes*, 314 N.C. 460, 314 S.E. 2d 741 (1985).

I would construe the use of the word "voluntarily" in the statute to mean that the trial judge should be able to look not only at the time of the acknowledgment but at the circumstances and forces which led to the defendant's statement to determine whether the purposes which prompted the inclusion of the factor in the list of mitigating factors are served by the acknowledgment under the circumstances of the particular case. I believe that such construction is required by both reason and logic.