**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 05-7955**

---

CARL E. LYONS,

                                        Petitioner - Appellant,

    versus

REGINALD WEISNER, Superintendent of Alexander
Correctional Institution,

                                        Respondent - Appellee.

---

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Malcolm J. Howard, Senior District Judge. (CA-04-774)

---

Argued: January 30, 2007        Decided: September 11, 2007

---

Before MOTZ, TRAXLER, and KING, Circuit Judges.

---

Reversed and remanded by unpublished per curiam opinion. Judge Traxler wrote an opinion concurring in the result.

---

**ARGUED:** Christopher R. Murray, DUKE UNIVERSITY SCHOOL OF LAW, Durham, North Carolina, for Appellant. Clarence Joe DelForge, III, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Erwin Chemerinsky, James E. Coleman, Jr., Tina Duan, Matthew W. Howell, Christopher Montville, Anastasia Wade, DUKE UNIVERSITY SCHOOL OF LAW, Durham, North Carolina, for Appellant. Roy Cooper, Attorney General, Raleigh, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Carl E. Lyons, a state prisoner, petitions for habeas relief, pursuant to 28 U.S.C.A. § 2254(d) (West 2005), from his sentence of 360-441 months' imprisonment, contending that he received a sentence in violation of Blakely v. Washington, 542 U.S. 296 (2004). Although the district court held, as the State conceded, that the state court's adjudication of his claim resulted in a decision contrary to established Supreme Court precedent in Blakely, the district court further concluded that this error was harmless. Because the Blakely sentencing error was not harmless, we must reverse and remand for further proceedings.

I.

Lyons entered an Alford plea to first-degree sexual offense and first-degree kidnaping in Wake County Superior Court in North Carolina. See North Carolina v. Alford, 400 U.S. 25 (1970). The prosecutor proffered a statement of facts in support of the Alford plea; Lyons neither objected to the statement, nor admitted the facts it contained. On direct appeal, the Court of Appeals of North Carolina summarized the prosecutor's statement as follows:

> Th[e] statement set forth the following facts. Defendant
> invited a childhood friend and his family to temporarily
> live in defendant's home in Raleigh while the friend
> looked for a house in the Triangle or Triad area. In
> encouraging his friend, defendant announced that he loved
> the friend's 15-year-old son ("K.V.M.") "like a son[.]"
> Despite the friend's initial reluctance, the family moved
> into defendant's home in the fall of 2001.

2

K.V.M., his father, his stepmother, and two step-siblings lived in defendant's home for approximately a month and a half. During this time, K.V.M.'s father traveled back and forth to Greensboro searching for a new house for his family, always returning to defendant's home at night.

On 4 December 2001, K.V.M.'s father, stepmother, and two step-siblings went out of town, but left K.V.M. in Raleigh in defendant's care. When K.V.M. returned from school that day, defendant was the only person in the house. Defendant and K.V.M. smoked marijuana together. Later, although defendant tried to engage K.V.M. in conversation, K.V.M. ignored him and played with a video game that defendant had previously given him.

K.V.M.'s father called that evening to tell defendant that he had purchased a home in Greensboro and that the family would move the next day. At some point after the call ended, defendant grabbed K.V.M. and took him upstairs to a bedroom. Defendant told K.V.M. that either K.V.M. was going to perform fellatio on him or that defendant was going to perform fellatio on K.V.M. When K.V.M. refused, defendant pulled a gun out of the closet and pointed it at K.V.M. Through the night, defendant repeatedly performed fellatio on K.V.M. while displaying the gun.

At some point that night, defendant forced K.V.M. to perform fellatio on him. When K.V.M. was unable to complete the act and gagged, defendant made K.V.M. lie down in bed with him and masturbate him until defendant ejaculated on K.V.M.'s chest.

The next morning, defendant would not allow K.V.M. to go toschool [sic]. Defendant swallowed several hundred over-the-counter painkillers and became woozy. He again performed fellatio on K.V.M., but then vomited and became weak. K.V.M. told defendant that the smell of vomit was making him ill and asked permission to go for a walk. Defendant told K.V.M. he could go outside, but that he had to return. K.V.M. went directly to a laundromat and called his mother in New York. After the call, he went to a police station where a police officer interviewed him, writing in her report that K.V.M. was violently shaking and crying.

3

The police arrived at defendant's home and took defendant to a hospital because of his consumption of pills. During questioning by police, defendant asked if K.V.M. was "okay" and said, "[T]ell him I am sorry."

State v. Lyons, No. COA03-208, 2004 WL 291984, at *1-2 (N.C. Ct. App. Feb. 17, 2004).

Based on Lyons's Alford plea alone, the state court could have imposed a maximum sentence of 288-355 months. However, at sentencing, pursuant to the North Carolina Structured Sentencing Act, see N.C. Gen. Stat. § 15A-1340.10 et seq. (1994), the court relied on the facts proffered in the prosecutor's statement to find an aggravating factor -- that Lyons took advantage of a position of trust or confidence to commit his offense -- and then sentenced Lyons to 360-441 months' imprisonment.

Lyons appealed to the Court of Appeals of North Carolina, maintaining that the sentencing court did not have a sufficient factual basis to find that he took advantage of a position of trust to commit the offense. While his appeal was pending before the Court of Appeals of North Carolina, Lyons also filed a Motion for Appropriate Relief (MAR) for collateral review, contending, inter alia, that the state court's "sentencing procedure," which "allowed the trial court, rather than a jury, to find the aggravating factor," violated Apprendi v. New Jersey, 530 U.S. 466 (2000), and Jones v. United States, 526 U.S. 227 (1999). In further support of this claim, he noted that the Supreme Court had granted certiorari in State v. Blakely, 62 P.3d 889 (Wash. 2003), cert. granted sub

4

nom. <u>Blakely v. Washington</u>, 71 U.S.L.W. 3724 (U.S. Oct. 20, 2003) (No. 02-1632).

The Court of Appeals of North Carolina resolved both the direct appeal and MAR in the same opinion: it found that the "undisputed" facts sufficed to support the trial judge's finding of the aggravating factor, and that <u>Apprendi</u> and <u>Jones</u> did not aid Lyons; it did not mention the pending <u>Blakely</u> case. Lyons appealed this decision to the Supreme Court of North Carolina, which summarily denied discretionary review. <u>State v. Lyons</u>, 595 S.E.2d 694 (N.C. 2004). Lyons's conviction became final ninety days after this decision, on June 30, 2004. See <u>Clay v. United States</u>, 537 U.S. 522, 525 (2003) (holding that a state judgment becomes final for habeas purposes when the time expires for filing a petition for writ of certiorari to the Supreme Court, or ninety days following the decision of the state's highest court).

On May 3, 2004, Lyons filed a second MAR, <u>pro se</u>, in which he once again claimed, <u>inter alia</u>, that under <u>Apprendi</u> only a jury could find the existence of the aggravating factor that increased his sentence. On July 9, 2004, the MAR court rejected that claim. It noted that after Lyons filed this <u>pro se</u> MAR, the Supreme Court of the United States had decided <u>Blakely</u> on June 24, 2004, but the MAR court concluded that <u>Blakely</u> did not assist Lyons because it did not apply retroactively to cases on collateral review. <u>State</u>

5

v. Lyons, Nos. 01CRS112990, 01CRS112994 (County of Wake, N.C. Superior Ct. July 9, 2004).

Lyons subsequently filed the instant pro se petition for federal habeas relief pursuant to 28 U.S.C. § 2254(d). The district court held that the state MAR court erred in its determination that Blakely did not apply to Lyons's claim because the MAR court "inadvertently failed to recognize that a case is not considered final on direct review until the 90-day time period to file a certiorari petition to the United States Supreme Court expires." Nonetheless, the district court denied Lyons habeas relief, concluding that any Blakely error was harmless. Lyons noted a timely appeal. We granted a certificate of appealability to consider Lyons's claim of Blakely error, and appointed counsel to represent him.

II.

The Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996), provides that federal courts may grant habeas relief only if an underlying state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Lyons contends that the state courts' adjudication of his case resulted in a decision that was

6

contrary to "clearly established Federal law" as determined by the Supreme Court in <u>Blakely</u>.

In <u>Blakely</u>, the Supreme Court clarified its holding in <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490 (2000), that the Sixth Amendment requires that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  The <u>Blakely</u> Court explained that the "'statutory maximum' for <u>Apprendi</u> purposes is the maximum sentence a judge may impose <u>solely on the basis of the facts reflected in the jury verdict or admitted by the defendant</u>."  542 U.S. at 303.

The North Carolina Structured Sentencing Act under which Lyons was sentenced plainly violates the <u>Blakely</u> holding.  For the North Carolina statute requires a judge (rather than a jury) to find by a preponderance of the evidence (rather than beyond a reasonable doubt) aggravating factors that increase the maximum penalty for a crime.  Indeed, in response to the Supreme Court's opinion in <u>Blakely</u>, the Supreme Court of North Carolina itself has held that those portions of the North Carolina Structured Sentencing Act that "require judges to consider aggravating factors not found by a jury or admitted by the defendant and which permit imposition of an aggravated sentence upon judicial findings of such aggravating factors by a preponderance of the evidence are unconstitutional."

7

<u>State v. Allen</u>, 615 S.E.2d 256, 262 (N.C. 2005) (withdrawn on other grounds).

Repeatedly conceding -- at the district court and in its appellate brief -- that <u>Blakely</u> applies to Lyons's case, the State argues that <u>Blakely</u> error was harmless and thus affirmance proper. We, however, asked the State to address at oral argument the question of whether <u>Blakely</u> qualifies as "clearly established Federal law" in this case given that although the <u>Blakely</u> opinion had been issued when Lyons's conviction became final for habeas purposes and when the state MAR court considered Lyons's claim, it had not been issued when the Supreme Court of North Carolina issued its order rejecting Lyons's direct appeal. We attempted to pursue this line of inquiry at oral argument, but the State once again conceded that <u>Blakely</u> applies to Lyons's appeal and requested that we "rule on the harmless error issue." Accordingly, we consider here only whether conceded <u>Blakely</u> error requires reversal in this case.

### III.

Typically, in conducting harmless error review in habeas cases, a court can grant relief only if, after consideration of the entire record, it can conclude "with fair assurance" that an error did not have "a substantial and injurious effect or influence" on the <u>jury's verdict</u>, <u>Kotteakos v. United States</u>, 328 U.S. 750, 765,

8

776 (1946), or is in "grave doubt" as to this question, <u>O'Neal v. McAninch</u>, 513 U.S. 432, 436 (1995). <u>See also</u> <u>Fry v. Pliler</u>, No. 06-5247, 127 S. Ct. 2321, 2326-28, 2007 WL 1661463, at *5-6 (U.S. June 11, 2007).[1]

Although by definition <u>Blakely</u> error arises from the <u>lack</u> of a jury verdict with respect to a sentencing factor, it can nevertheless be harmless. <u>See</u> <u>Washington v. Recuenco</u>, 548 U.S.__, 126 S. Ct. 2546, 2553 (2006). In determining the harmlessness of an error in a case <u>without</u> a jury verdict, a court considers the entire record and determines whether it can conclude "with fair assurance" that a reasonable jury <u>would</u> have found beyond a reasonable doubt that the defendant committed the acts establishing the challenged sentencing factor, or if it is in "grave doubt" as to this question. <u>Cf.</u> <u>Patterson v. Haskins</u>, 316 F.3d 596, 609 (6th Cir. 2003) (applying this standard when considering on habeas whether a trial court's failure to instruct a jury on an element of an offense constituted harmless error).

_____

[1]The Supreme Court initially enunciated this standard in reviewing nonconstitutional errors on direct appeal of a federal conviction in <u>Kotteakos</u>, and later adopted it as the appropriate standard for collateral review of a state court criminal judgment under 28 U.S.C. § 2254. <u>See</u> <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637-38 (1993). Then in <u>O'Neal</u>, the Court held that if a federal court reviewing a state court judgment under § 2254 has "grave doubt" as to the harmlessness of an error, it should "treat the error as if it affected the verdict." 513 U.S. at 436. In <u>Fry</u>, the Court reiterated that the <u>Brecht</u>-<u>O'Neal</u> standard applies in all § 2254 cases, even those decided post-AEDPA. 127 S. Ct. at 2326-28.

9

Here, the district court reasoned that the Blakely error was harmless because "[b]ased on the evidence in the stenographic transcript of the guilty plea proceeding, no reasonable jury could have" failed to find that Lyons took advantage of a position of trust to commit his offense.  We cannot agree.  We have no need to fall back on O'Neal's "grave doubt" rule, for we find it impossible to conclude with any assurance, on the basis of the record in this case, that a reasonable jury would have found beyond a reasonable doubt this aggravating factor, which the sentencing judge found only by a preponderance of the evidence based on the prosecutor's proffer.

Although Lyons did not object to the prosecutor's proffer when he entered his Alford plea, neither did he admit to the facts contained in it.  See Alford, 400 U.S. at 37.  This proffer alone does not give us fair assurance that a reasonable jury would have found the presence of the position of trust or confidence aggravating factor beyond a reasonable doubt.[2]

Indeed, the North Carolina courts have "upheld a finding of the 'trust or confidence' factor in very limited factual

_____

[2]The victim's mother, who was living in New York at the time of the offense, testified at the sentencing hearing, "I gave . . . my trust" to Lyons and "[w]hen [K.V.M.] told me [what] happened, I knew exactly what he was talking about" because "we always heard [about] things that [Lyons] ha[d] done."  This statement does not appear to have been offered specifically in support of the aggravating factor.  In any event, it is too ambiguous to constitute support for proof of the aggravating factor beyond a reasonable doubt.

10

circumstances."  State v. Mann, 560 S.E.2d 776, 791 (N.C. 2002).

To apply the enhancement, a jury must find that both: (1) "a

position of trust existed," and (2) the "defendant abused the

position of trust in order to commit the assault."  See State v.

Nicholson, 610 S.E.2d 433, 437 (N.C. Ct. App. 2005).  Even if we

assume that the facts stated in the proffer are true, they do not

provide us with "fair assurance" that a reasonable jury would have

found beyond a reasonable doubt that a position of trust existed

between Lyons and the victim or that Lyons abused that position to

commit the assault.

As to the existence of a position of trust, the State asserts

that a position of trust must exist when a minor is left in the

care of the defendant overnight.  But all of the cases on which the

States relies involve very different facts.  For, in each of them

the minor victim had a familial or other close relationship with

the abuser, or was very young and so extremely dependent on the

defendant, or both.  See State v. Farlow, 444 S.E.2d 913, 918 (N.C.

1994) (finding a position of trust when nine-year old victim

"essentially lived with [the] defendant" while the mother was

repeatedly away for her job as a long-distance truck driver); State

v. Holden, 365 S.E.2d 626 (N.C. 1988) (finding a position of trust

when victim was three-months old and the daughter of the

defendant); State v. Daniel, 354 S.E.2d 216, 218 (N.C. 1987)

(finding a position of trust when defendant mother was "singularly

11

responsible" for the infant victim's "welfare"); State v. Gilbert, 385 S.E.2d 815, 817 (N.C. Ct. App. 1989) (finding a position of trust when the victim was six-years old and "a frequent visitor in defendant's home"); State v. Caldwell, 355 S.E.2d 813, 814 (N.C. Ct. App. 1987) (finding a position of trust between defendant and his stepson and his stepson's cousin, both of whom lived with the defendant for the summer). In the case at hand, the facts contained in the proffer indicate that the victim was not an infant, not six, not nine, but fifteen-years old; moreover, he was neither related in any way to Lyons nor did he have a particularly close relationship with Lyons. Certainly it could not be said that Lyons was "singularly" responsible for his "welfare." Daniel, 354 S.E.2d at 218. Thus, a jury might well have concluded that no position of trust existed.

Moreover, even if a jury were to find that a position of trust did exist, the North Carolina Court of Appeals has held that a defendant has not taken advantage of a position of trust or confidence when the "defendant's actions were accomplished as a result of the use of force alone." Nicholson, 610 S.E.2d at 437. According to the prosecution's proffer, Lyons accomplished his actions solely through the use of force, by pointing a gun at K.V.M. Thus, a reasonable jury, having been instructed on the

12

elements of the aggravating factor, could well have found that the crime was not the result of abuse of a position of trust.[3]

Hence, we do not have fair assurance that a reasonable jury would have found the aggravating factor to enhance Lyons's sentence. Accordingly, the state court's <u>Blakely</u> error resulted in Lyons receiving a sentence months, and perhaps years, longer than he would otherwise have received. Thus, we cannot conclude that the error did not have a "substantial and injurious effect" on Lyons's sentence. <u>Kotteakos</u>, 328 U.S. at 765, 776; <u>see also</u> <u>Brecht</u>, 507 U.S. at 637. In sum, the error was not harmless.[4]

---

[3]The North Carolina Court of Appeals in this case concluded that the facts were "sufficient" to support a finding of the aggravating factor; but that court operated under a pre-<u>Blakely</u> regime where the <u>trial judge</u> needed to find the facts supporting the aggravating factor only by a <u>preponderance of the evidence</u>. That holding does not affect our conclusion that we have grave doubt whether a <u>jury</u> could have found the facts supporting the aggravating factor <u>beyond a reasonable doubt</u>.

[4]The State also argues that Lyons's <u>Blakely</u> claim is waived and non-exhausted. With respect to waiver, relying on <u>Tollett v. Henderson</u>, 411 U.S. 258 (1973), the State contends that Lyons waived his right to have a jury sentence him by pleading guilty. But <u>Tollett</u> only holds that when a defendant pleads guilty, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred <u>prior</u> to the entry of the guilty plea." <u>Id.</u> at 267 (emphasis added). Here, the constitutional violation -- the judge finding the aggravating factor by a preponderance of the evidence -- occurred <u>after</u> Lyons pleaded guilty. Thus, Lyons did not waive his right to appeal this constitutional violation.

With respect to exhaustion, the State contends that Lyons failed to exhaust state remedies because he did not seek review of the order denying his post-conviction MAR. In fact, Lyons exhausted his claim by raising it on direct appeal to the Court of Appeals of North Carolina and the Supreme Court of North Carolina, which is sufficient in North Carolina to exhaust a claim for

13

IV.

For the foregoing reasons, we conclude that the district court erred in denying Lyons habeas relief.  We reverse the judgment of the district court and remand the case with directions to issue a writ of habeas corpus, unless the state court resentences Lyons within a reasonable period of time to be set by the district court.

<u>REVERSED AND REMANDED</u>

---

federal habeas purposes.  <u>See</u> <u>Skipper v. French</u>, 130 F.3d 603, 610 n.4 (4th Cir. 1997) (holding on federal habeas review of a North Carolina  conviction that "[e]xhaustion principles would not have required" petitioner even to bring a MAR at all, so long as he raised federal claims on direct appeal).  Thus, the North Carolina courts had a "full" and "fair opportunity" to consider the substance of his claim, so it has been properly exhausted. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>see also</u> <u>Baldwin v. Reese</u>, 541 U.S. 27, 29, 32 (2004) (holding that "[t]o provide the State with the necessary opportunity, the prisoner must fairly present his claim," and concluding that "fair presentation" requires simply that the prisoner's petition or brief "alert [the court] to the presence of a federal claim" (internal quotation marks omitted)).

TRAXLER, Circuit Judge, concurring in the result:

Because of the concessions made by the State and the fact that I have grave doubt as to the harmlessness of attributing the aggravating circumstance to the appellant, I concur in the result reached by my colleagues.