IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1038

Filed 5 November 2025

Wake County, No. 20CR210836-910

STATE OF NORTH CAROLINA

       v.

ALEXANDER GANDARILLA DE LOSSANTOS

Appeal by defendant from judgment entered 27 April 2022 by Judge A. Graham Shirley in Wake County Superior Court. Heard in the Court of Appeals 21 May 2025.

*Attorney General Jeff Jackson, by Special Deputy Attorney General Zachary K. Dunn, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender David S. Hallen, for defendant.*

FREEMAN, Judge.

Defendant appeals from judgment entered upon a jury verdict finding him guilty of second-degree murder. On appeal, defendant argues: (1) the trial court's finding of the aggravating sentencing factor that defendant took advantage of a position of trust or confidence to commit the crime was not adequately supported by the evidence, and (2) his trial counsel rendered ineffective assistance by advising him to accept an open plea to aggravating sentencing factors. After careful review, we conclude the trial court did not err in finding the position of trust or confidence aggravating factor and we dismiss defendant's ineffective assistance of counsel claim

without prejudice.

## I.    Factual and Procedural Background

On the evening of 15 July 2020, defendant, who was eighteen years old at the time, was drinking alcohol at a friend's house near downtown Apex.  At some point in the evening, defendant posted a photo of a girl he "was going to meet up with" to Snapchat and defendant's recent ex-girlfriend, seventeen-year-old Alexia Carrilo-Vicencio, began messaging defendant on Snapchat about the photo.  Alexia was upset with defendant and asked him what he was doing in Apex.

Around 1:00 a.m., defendant left his friend's house and began driving to his home in Raleigh.  When defendant "was about to hit the highway," he changed his mind about going home and decided to go "over to Alexia's house to apologize" because he knew he "messed up by posting another girl."  Defendant parked by the garage, the place he always parked when visiting Alexia's home, because it could not be seen from the front of the house and "was like a blind spot."

Defendant entered the home "the same way [he] always" did during his relationship with Alexia, through an unlocked sliding glass door at the back of the home.  Defendant was carrying a loaded 9mm handgun in his waistband, a gun he "always" carried on him because he feared Alexia's stepfather seeing him and because defendant "was selling drugs" and "had to protect [him]self."  Alexia did not know defendant was visiting her home that evening.

Defendant proceeded through the home and opened another door that was

"always open" on his way to Alexia's bedroom. When defendant reached Alexia's bedroom door, he paused outside it because he heard Alexia speaking to one of her friends on the phone. Defendant overheard Alexia, who was unaware of defendant's presence outside her bedroom door, tell her friend that she had engaged in a relationship "with one of [defendant's] best friends." Defendant then entered Alexia's bedroom.

Alexia, who was "surprised when she saw [defendant] inside her house," got up from her bed and leaned against her doorframe. Defendant kissed Alexia on the forehead, and Alexia left defendant alone in her bedroom while she went to use the restroom. Alexia returned after about two minutes, and defendant began arguing with her about what she told her friend. Defendant then punched Alexia in the face and shot her three times.

The sound of the gunshots woke Alexia's stepfather, Terrence James, who rushed to Alexia's bedroom and saw defendant kneeling over Alexia's body. Mr. James called 911 and waited outside for the police to arrive. Around 2:15 a.m., Officer Hector Alonso of the Angier Police Department arrived at the home and spoke with Mr. James outside. Mr. James informed Officer Alonso that Alexia was in her bedroom but that he did not know where defendant was, so Officer Alonso retrieved a shotgun from his patrol car and entered the home to clear the scene for medical personnel to enter.

Upon entering the home, Officer Alonso heard Alexia moaning and located

Alexia lying face down on the floor of her bedroom. Officer Alonso observed shell casings and some of Alexia's teeth on the floor beside her. Medical personnel transported Alexia to a nearby hospital where she later succumbed to her injuries. Defendant, who had fled the scene prior to law enforcement's arrival, was arrested in Mexico two months later.

On 29 September 2020, a Wake County grand jury indicted defendant on one count of murder and on 18 April 2022, defendant's matter came on for trial in Wake County Superior Court. On 27 April 2022, the jury found defendant not guilty of first-degree murder but guilty of the lesser-included offense of second-degree murder.

During the sentencing phase, defendant pleaded guilty to two aggravating factors: using a deadly weapon at the time of the crime and taking advantage of a position of trust or confidence to commit the crime. The trial court accepted defendant's plea to the factor that defendant took advantage of a position of trust or confidence and determined that the evidence supported such factor beyond a reasonable doubt.[1] The trial court found two mitigating factors, found that the aggravating factors outweighed the mitigating factors, and sentenced defendant to an aggravated sentence of 300 to 372 months in prison.

Defendant did not timely appeal but filed a petition for writ of certiorari in this Court on 17 November 2023. On 19 March 2024, this Court allowed defendant's

---

[1] The trial court did not consider the aggravating factor that defendant used a deadly weapon at the time of the crime as it determined such factor was "an element of the crime."

petition for writ of certiorari to review the 27 April 2022 judgment of the Wake County Superior Court.

## II.    Jurisdiction

This Court has jurisdiction to consider defendant's appeal pursuant to our 19 March 2024 order allowing defendant's petition for writ of certiorari.  *See* N.C.G.S. § 15A-1444(g) (2023); N.C. R. App. P. 21.

## III.    Standard of Review

We review alleged sentencing errors to determine "whether the sentence is supported by evidence introduced at the trial and sentencing hearing."  *State v. Patterson*, 269 N.C. App. 640, 645 (2020) (cleaned up).  "Whether the sentence is supported by sufficient evidence is a question of law we review de novo."  *Id.* (cleaned up).

## IV.    Discussion

On appeal, defendant contends: (1) the trial court's finding of the aggravating sentencing factor was not supported by sufficient evidence, and (2) his trial counsel rendered ineffective assistance by advising him to accept an open plea to the aggravating factors.  We address each argument in turn.

### A. Aggravating Factor

Defendant first argues the trial court's finding of the aggravating sentencing factor that defendant took advantage of a position of trust or confidence to murder

Alexia was not supported by sufficient evidence.[2]  Specifically, defendant contends there was "not a factual basis to support either the claim that [defendant] and Alexia occupied a position of trust with respect to one another" or, if a position of trust or confidence did exist, "that [defendant] exploited such a position to murder Alexia."

"The State has the burden of proof to establish the existence of an aggravating factor beyond a reasonable doubt." *Patterson*, 269 N.C. App. at 645 (citing N.C.G.S. § 15A-1340.16(a) (2019)).  Where, as here, a defendant admits "to the existence of an aggravating factor," such admission "must be consistent with the provisions of G.S. 15A-1022.1." N.C.G.S. § 15A-1340.16(a1) (2023).  Accordingly, prior to accepting a defendant's admission to an aggravating factor, the trial court must "determine that there is a factual basis for the admission." N.C.G.S. § 15A-1022.1(c) (2023).  The trial court may base this determination "on the factors specified in G.S. 15A-1022(c), as well as any other appropriate information." *Id.*

> This determination [of a factual basis] may be based upon information including but not limited to:
>
> (1) A statement of the facts by the prosecutor.
>
> (2) A written statement of the defendant.
>
> (3) An examination of the presentence report.
>
> (4) Sworn testimony, which may include reliable hearsay.

---

[2] In the sentencing context, defendant's plea and stipulation to this aggravating factor does not preclude appellate review of whether such factor was supported by sufficient evidence.  *See State v. Khan*, 366 N.C. 448 (2013); *State v. Bacon*, 228 N.C. App. 432 (2013).

(5) A statement of facts by the defense counsel.

N.C.G.S. § 15A-1022(c) (2023). "[T]he trial judge has wide latitude in determining the existence of aggravating and mitigating factors, for it is 'he [or she] who observes the demeanor of the witnesses and hears the testimony.'" *State v. Canty*, 321 N.C. 520, 524 (1988) (quoting *State v. Ahearn*, 307 N.C. 584, 596 (1983)).

One of the statutory aggravating factors is that the "defendant took advantage of a position of trust or confidence, including a domestic relationship, to commit the offense." N.C.G.S. § 15A-1340.16(d)(15). "A finding of this aggravating factor depends on 'the existence of a relationship between the defendant and victim generally conducive to reliance of one upon the other.'" *State v. Helms*, 373 N.C. 41, 44 (2019) (quoting *State v. Daniel*, 319 N.C. 308, 311 (1987)).

Our courts "have upheld a finding of the 'trust or confidence' factor in very limited factual circumstances." *Id.* "Specifically, we have upheld this aggravating where the relationship was between the defendant and the victim[.]" *Id.* A relationship in which the victim trusted the defendant "in the same way she might trust any adult acquaintance" is "insufficient to support this aggravating factor." *Id.* Further, the mere existence of a recent or ongoing romantic relationship, standing alone, is insufficient. The defendant must "utilize that position of trust or confidence . . . in some way to effectuate the offense." *State v. Myers*, 238 N.C. App. 133, 139 (2014). In other words, this aggravating factor may be properly supported where "[b]ut for the relationship between defendant and the victim, . . . the crime[ ] against

the victim could not have been carried out[.]" *State v. Wiggins*, 159 N.C. App. 252, 268 (2003).

Defendant relies on *State v. Myers*, *State v. Marecek*, and *State v. Arnold*, to support his contentions that: (1) no position of trust or confidence existed between defendant and Alexia, and (2) even if such position did exist, there was insufficient evidence to support the aggravating factor because there must be "deception and exploitation of trust to establish sufficient evidence for the aggravating factor in a relational setting."

In *Myers*, the defendant and the victim had been married for eighteen years and shared a home together. 238 N.C. App. at 139. The victim was shot "while not directly facing" the defendant, and the State argued that this aggravating factor was satisfied because the victim "had no reason to distrust" the defendant "immediately before he fired the gun." *Id.* This Court disagreed and concluded the aggravating factor was not supported because "there [wa]s no evidence that [d]efendant asked [the victim] to face away from him before firing the pistol, or that he otherwise utilized his position of trust or confidence . . . to effectuate her death." *Id.*

In *State v. Marecek*, the victim had "discovered some letters that she thought indicated her husband," the defendant, "was having an affair with a woman in Czechoslovakia." 152 N.C. App. 479, 482 (2002). The couple planned to go on a trip to Fort Fisher, and the victim indicated to a friend "that she did not want to go" and stated that "she was afraid she might not return." *Id.* at 483. The defendant

murdered his wife on the trip, and at sentencing, the trial court found the aggravating factor that the defendant took advantage of a position of trust of confidence to commit the crime. *Id.* at 513. This Court concluded the trial court erred in finding this factor because the evidence "suggest[ed] that [the victim] distrusted defendant and feared him" and because "[t]here was no evidence showing that defendant exploited his wife's trust in order to kill her." *Id.* at 514.

In contrast, our Supreme Court held there was sufficient evidence to support the trial court's finding of the aggravating factor that the defendant took advantage of a position of trust or confidence to commit the offense in *State v. Arnold*, 329 N.C. 128, 144 (1991). There, the defendant and a man she had a relationship with planned her husband's murder and she was later convicted of second-degree murder and conspiracy to commit murder. *Id.* at 130–32. On appeal, the defendant's conviction for second-degree murder was vacated but her conviction for conspiracy and the trial court's finding of the aggravating factor were upheld. *Id.* at 130–31, 144. Our Supreme Court determined such finding was supported by evidence that the victim believed the defendant had "come to her senses and ended her relationship" with the other man. *Id.* at 144 (cleaned up).

Here, defendant first argues that no position of trust or confidence existed between defendant and Alexia because, as in the relationship at issue in *Marecek*, there was evidence of hostility and distrust between them. We disagree. Although the evidence in this case demonstrated a relatively volatile, but not entirely atypical,

teenage romance that included breakups and reconciliations, Alexia's behavior on the night of her murder did not evidence distrust of defendant.

When defendant showed up unannounced and uninvited at her bedroom door in the middle of the night, Alexia was surprised to see him but did not exhibit any behavior manifesting distrust or fear. Rather than asking defendant to leave, calling for help, or attempting to hide or flee, Alexia allowed defendant to kiss her on the forehead, left the room to use the restroom, and then willingly returned to her bedroom to rejoin defendant. This behavior, coupled with defendant's intimate knowledge of Alexia's home and his habitual use of clandestine methods to access her bedroom, satisfies us that a position of trust or confidence existed between defendant and Alexia.

Defendant next contends there was insufficient evidence that he exploited a position of trust or confidence to commit the crime because the cited cases establish there must be "deception and exploitation of trust" to support this aggravating factor. Again, we disagree. Though the statutory language and our precedent require a defendant to exploit or take advantage of the relationship to commit the offense, "deception" is not required.

Defendant appears to argue that, based on *Arnold*, this aggravating factor can only be properly found where there is some sort of "carefully planned deceit" of the victim. This argument is foreclosed by the fact that this aggravating factor can apply to sentencing for many felony convictions, including crimes—like second-degree

murder—that do not require premeditation or "carefully planned deceit." Our precedent establishes that the relevant question is not whether the defendant carefully planned to use the position of trust or confidence to *deceive* the victim, but whether the defendant "utilize[d] that position of trust or confidence . . . in *some way* to effectuate the offense." *Myers*, 238 N.C. App. at 139 (emphasis added); *see also Wiggins*, 159 N.C. App. at 268–69 (concluding that the factor was properly supported where "[b]ut for the relationship between defendant and the victim, . . . [t]he crimes against the victim could not have been carried out[.]").

Here, the evidence establishes that, but for the position of trust or confidence that existed between defendant and Alexia, the crime could not have been carried out as it was. Defendant "utilize[d] that position of trust or confidence . . . to effectuate the offense," *Myers*, 238 N.C. at 139, by parking in a "blind spot" he knew of due to his relationship with Alexia and taking advantage of his knowledge of the home's layout and the family's habits to proceed through the home without alerting its inhabitants. If Alexia only trusted defendant "in the same way she might trust any adult acquaintance," *Helms*, 373 N.C. at 44, she would have reacted with fear and panic when he showed up unannounced at her bedroom door around 2:00 a.m.

Instead, because she trusted defendant, she let him enter her room without raising the alarm. Alexia's trust in defendant allowed him to remain undetected by the other members of her family until her stepfather was awoken by the sound of defendant fatally shooting Alexia. This evidence was sufficient to support a finding

that "defendant took advantage of a position of trust or confidence . . . to commit the offense," N.C.G.S. § 15A-1340.16(d)(15), and the trial court did not err in finding this aggravating factor.

## B. Ineffective Assistance of Counsel

Defendant next argues that his trial counsel rendered ineffective assistance by advising him to accept an open plea to the aggravating factors that he used a deadly weapon at the time of the crime and took advantage of a position of trust or confidence to commit the crime. Specifically, defendant contends his counsel rendered ineffective assistance because: (1) "[p]leading guilty to aggravating factors without some form of agreed-upon benefit is not a reasonable tactical decision," and (2) defendant was prejudiced as "the jury could have found that Alexander did not take advantage of a position of trust or confidence to murder Alexia."

"The Sixth Amendment to the United States Constitution guarantees to all defendants the right to counsel in criminal proceedings." *State v. Oglesby*, 382 N.C. 235, 242 (2022). "The right to counsel necessarily encompasses 'the right to effective assistance of counsel.'" *Id.* (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970)). "The two-part test for ineffective assistance of counsel is the same under both the state and federal constitutions." *State v. Thompson*, 359 N.C. 77, 115 (2004). "A defendant must first show that his defense counsel's performance was deficient, and second, that counsel's deficient performance prejudiced his defense." *Id.*

Generally, a claim of ineffective assistance of counsel

should be considered through a motion for appropriate relief before the trial court in post-conviction proceedings and not on direct appeal. A motion for appropriate relief is preferable to direct appeal because in order to defend against ineffective assistance of counsel allegations, the State must rely on information provided by the defendant to trial counsel at a full evidentiary hearing on the merits of the ineffective assistance of counsel claim.

. . .

[O]ur review is limited to the record before us, without the benefit of information provided by defendant to trial counsel, as well as defendant's thoughts, concerns, and demeanor that could be provided in a full evidentiary hearing on a motion for appropriate relief. Particularly where [d]efendant's arguments concern potential questions of trial strategy and counsel's impressions, an evidentiary hearing available through a motion for appropriate relief is the procedure to conclusively determine these issues.

*State v. Allen*, 262 N.C. App. 284, 285–86 (2018) (cleaned up).

Here, the first prong of defendant's ineffective assistance of counsel claim—whether his counsel's performance was deficient—involves "potential questions of trial strategy and counsel's impressions," *id.* at 286, that we are unable to definitively answer based on the record before us. The transcript sheds no light on any discussions between defendant and his trial counsel regarding defendant's open plea to the aggravating factors beyond defendant's statement to the trial court that he was satisfied with his attorney's legal services. Accordingly, we dismiss defendant's ineffective assistance of counsel claim without prejudice.

## V.    Conclusion

After careful consideration of defendant's arguments on appeal, we conclude the evidence in this case established a sufficient factual basis to find the aggravating factor that defendant took advantage of a position of trust or confidence to commit the second-degree murder of Alexia and that the trial court did not err in finding such factor. We dismiss defendant's ineffective assistance of counsel claim without prejudice.

NO ERROR IN PART, DISMISSED IN PART.

Judges ZACHARY and GORE concur